802 So.2d 442 (2001)
Cary PORTNER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-58.
District Court of Appeal of Florida, Fourth District.
December 14, 2001.
*443 Patrick C. Rastatter of Glass & Rastatter, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Appellant, Cary Portner, was charged by information with aggravated stalking, in violation of section 784.048(4), Florida Statutes (1999). The information alleged that appellant repeatedly followed or harassed the named victim, Renee Monzo, after an injunction for protection against violence had been issued. Appellant was found guilty by a jury and sentenced to 21.3 months incarceration. Of the four issues raised in this appeal, we discuss only his contention that the trial court committed reversible error by allowing the state to impeach appellant with his deposition testimony from a related civil case. We agree with appellant that the state's failure to disclose this testimony in discovery constituted a discovery violation and resulted in procedural prejudice. We reverse.
Renee Monzo (Monzo) testified that she first met appellant in 1996 at the Fashion *444 Mall in Plantation. Monzo worked at Macy's and appellant owned a number of stores in the mall. Soon after meeting, Monzo and appellant became romantically involved and entered into an agreement providing that Monzo would work part time in appellant's stores for three years in exchange for $30,000. On October 9, 1997, the couple opened a bank account at Am-Trust in Monzo's name. Appellant was to hold the passbook necessary for any transactions. According to Monzo, their personal and business relationship ended in December of 1998, when she found out that appellant was seeing other women.
In September 1999, Monzo withdrew all of the money from the joint account without appellant's knowledge or consent. At the time, the account had deposits made by appellant totaling $30,000, $20,000 of which appellant claims he deposited after they broke up. A short time later, Monzo complained of receiving numerous verbal threats from appellant when encountering him at the mall. She obtained a civil restraining order against appellant. Afterward, Monzo reported seeing appellant in a shopping center parking lot and again in her apartment complex. One morning, Monzo awoke to find that her automobile had been vandalized during the night. Later that afternoon she received a telephone call from appellant.
In December 1999, appellant filed suit against Monzo for the money removed from the joint bank account. On December 12, 1999, police responded to a 911 call from Monzo. Monzo reported that while driving on Nob Hill Road between 10:00 and 10:30 p.m., she noticed appellant following her. According to Monzo, appellant ran her car off the road into an open field, pulled his car near hers, rolled down his window, and stared at her. He then drove off. The next day the police located appellant at one of his stores and arrested him for aggravated stalking.
On the day before trial was scheduled to begin, appellant notified the state that he intended to use documents from his civil lawsuit against Monzo during the trial. The case was continued for approximately two weeks so that the state could review the documents. During that period, the state filed supplemental discovery, listing as exhibits "all pleadings" in the civil case.
At trial, appellant denied the stalking allegations and defended on the theory that Monzo sought the restraining order to seek retribution against him and gain an advantage in the civil lawsuit. Appellant testified in his own defense. On cross examination, the state questioned appellant about an agreement he claimed he had with Monzo concerning the AmTrust joint bank account. Monzo had denied signing the written agreement and testified that her purported signature was a forgery.[1] The parties' signatures were notarized by Yorke Spence, an employee from a different bank. The prosecutor asked appellant if he had ever had documents notarized by Spence before. Appellant answered that he had not. The prosecutor then produced a deposition given by appellant in his civil action against Monzo. In the civil deposition, appellant testified that he knew Spence from his dealings with Nations-bank and that Spence had previously notarized documents for him.
Appellant objected to the state's attempt to impeach him with this deposition testimony because the state had not disclosed it during discovery. The state countered *445 that it had listed "all pleadings" from the civil case in its December 8 supplemental discovery. After a discussion outside the jury's presence as to whether a deposition should be considered a "statement" or a "pleading," the trial court overruled appellant's objection and allowed the state to use appellant's deposition testimony for impeachment. The court also denied appellant's motion for a mistrial.
As appellant correctly argues, Florida Rule of Criminal Procedure 3.220 requires the state to disclose any statements made by a defendant.[2] Contrary to the state's argument at trial, this rule is not limited to statements made by an accused to the police. Furthermore, the discovery rules impose upon a party the continuing duty to disclose.[3]
The state first argues that the trial court properly determined that there was no discovery violation because the state's notice of its intent to rely on "all pleadings" in the civil case encompassed appellant's deposition. We disagree. A pleading is a "formal document in which a party to a legal proceeding sets forth or responds to allegations, claims, denials, or defenses." Black's Law Dictionary 1173 (7th ed.1999). A deposition is a "witness's out-of-court testimony that is reduced to writing for later use in court or for discovery purposes." Id. at 451. Because rule 3.220(b)(1)(C) clearly obligates the state to disclose "any recorded statements" of the defendant, the state's general reference to "all pleadings" was insufficient to comply with the rule.
The state next argues that the trial court properly found no discovery violation because defense counsel created "the discovery problems that plagued the trial" by his late disclosure of documents from the civil case, thereby causing the supplemental discovery notice to be filed late. However, as stated earlier, the criminal discovery rules place a continuing obligation on the parties to disclose material they discover in the same manner as required under the rules for initial discovery. Thus, the state's argument on this point has no merit.
We conclude that the state committed a discovery violation in failing to list appellant's civil deposition statements in its discovery disclosure. Once appellant brought this discovery violation to the trial court's attention, the court was required to hold a Richardson hearing.[4] At a minimum, Richardson requires an inquiry into the circumstances of the discovery violation, including: (1) whether the violation was inadvertent or willful, (2) whether it was trivial or substantial, and (3) whether noncompliance with this rule has prejudiced the opposing party's ability to properly prepare for trial. See Reese v. State, *446 694 So.2d 678, 682 (Fla.1997); Brown v. State, 640 So.2d 106, 107 (Fla. 4th DCA 1994); Mondo v. State, 640 So.2d 1232, 1234 (Fla. 4th DCA 1994); Hernandez v. State, 572 So.2d 969, 971 (Fla. 3d DCA 1990). There is no impeachment exception to the Richardson rule. Elledge v. State, 613 So.2d 434, 436 (Fla.1993). Here, the record reflects that the trial court did not inquire into these matters after determining that the deposition testimony was exempt from the state's pretrial discovery obligation.
Finally, the state argues that even if the trial court failed to conduct a proper Richardson hearing, the error was harmless because appellant did not suffer any procedural prejudice by the state's use of his deposition testimony for impeachment. Procedural prejudice occurs when there is "a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred." State v. Schopp, 653 So.2d 1016, 1020 (Fla.1995). The state points out that appellant's defense relied heavily on documents generated in the civil case. Thus, the state argues, appellant's claim that he was prejudiced by the introduction of his deposition testimony is not credible.
Although the failure to conduct a Richardson hearing is not per se reversible error, see Schopp, 653 So.2d at 1020, harmful error is presumed when a Richardson inquiry is not conducted. See Mobley v. State, 705 So.2d 609, 611 (Fla. 4th DCA 1997). As the supreme court held in Schopp, "only if the appellate court can say, beyond a reasonable doubt, that the defense was not procedurally prejudiced by the discovery violation can the error be considered harmless." 653 So.2d at 1021.
Here, we cannot say beyond a reasonable doubt that appellant was not procedurally prejudiced by the surprise use of his civil deposition. Had appellant been aware that the state was prepared to impeach him with this contradictory testimony, he may have decided not to testify and place his credibility before the jury. Appellant's credibility was especially critical in this case where his denial of any stalking activity was directly pitted against the testimony of the victim; there were no other eyewitnesses to the alleged incidents of harassment.[5]
In most cases, the decision whether a defendant will testify is a strategic call which can materially alter the outcome of a case. A defendant's ability to make an informed decision in this regard is certainly affected by the state's nondisclosure of impeachment material discoverable under the rules. As stated above, harmful error is presumed from the failure to conduct an adequate Richardson hearing. Because the state has not rebutted this presumption of prejudice, we reverse appellant's conviction and remand for a new trial.
REVERSED and REMANDED for proceedings consistent with this opinion.
DELL and GUNTHER, JJ., concur.
NOTES
[1] The October 9, 1997 agreement, which was entered into evidence, stated that she and appellant were to make deposits into the account solely for the purpose of buying a home in the event they got married and that each party was to track their own deposits and make no withdrawals from the account without the other's consent.
[2] Fla. R.Crim. P. 3.220(b) provides in pertinent part:

(1) Within 15 days after service of the Notice of Discovery, the prosecutor shall serve a written Discovery Exhibit which shall disclose to the defendant and permit the defendant to inspect, copy, test, and photograph the following information and material within the state's possession or control:
(C) any written or recorded statements and the substance of any oral statements made by the defendant ... together with the name and address to each witness to the statements.
[3] Fla. R.Crim. P. 3.220(j) provides:

If, subsequent to compliance with the rules, a party discovers additional witnesses or material that the party would have been under a duty to disclose or produce at the time of the previous compliance, the party shall promptly disclose or produce the witnesses or material in the same manner as required under these rules for initial discovery.
[4] See Richardson v. State, 246 So.2d 771 (Fla. 1971).
[5] As to the December 12, 1999 incident, wherein appellant was accused of running Monzo off the road, appellant called several witnesses to testify that he was at a store employees' business meeting and stocking shelves at the time.