851 So.2d 773 (2003)
Oneil LUIS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-3275.
District Court of Appeal of Florida, Second District.
July 9, 2003.
*774 James Marion Moorman, Public Defender, and Charles D. Peters, Special Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Katherine V. Blanco, Senior Assistant Attorney General, Tampa, for Appellee.
VILLANTI, Judge.
Oneil Luis challenges his conviction and sentence for possession of cocaine with intent to sell within 1000 feet of a church. Because the State committed a discovery violation and the trial court's actions did not sufficiently cure the resulting prejudice, we reverse.
Three Winter Haven police officers traveled to a Marathon gas station located 500 feet from the First Christian Church based on a tip that a black male wearing a yellow shirt was selling cocaine in the parking lot of that gas station. When the officers arrived at the gas station, they spotted Luis, who fit the description of the seller provided in the tip. As the officers approached Luis, he fled. During the brief foot chase, Luis allegedly threw a brown cigar tube to the ground. When the cigar tube was recovered, it contained approximately twenty pieces of crack cocaine. Upon arrest, Luis had $131 in cash in his pocket. Following Miranda[1] warnings, Luis allegedly told the officers that he had just started selling crack cocaine.
Prior to trial, the State provided its discovery exhibit, including its list of witnesses, to Luis' counsel. Officer Fields was listed as a category A witness on the State's discovery exhibit; however, he was not designated as an expert witness. At trial, after Officer Fields testified to the *775 facts surrounding Luis' arrest, the State began questioning Officer Fields concerning his training and experience in narcotics investigations. When Luis objected on relevance grounds, the State indicated for the first time that it intended to qualify Officer Fields as an expert in street-level narcotics transactions and drug investigations. Luis then objected on the ground that Officer Fields was not listed as an expert witness on the State's discovery exhibit.
At a sidebar conference, the State agreed that it had not listed Officer Fields as an expert witness on its discovery exhibit but argued that it was not required to designate which category A witnesses it intended to call as experts. The trial court then asked Luis' counsel, Mr. Mills, whether Luis had been prejudiced by the State's omission. Mr. Mills told the trial court that he would have prepared differently for Officer Fields' testimony and would have altered his case preparation had he known that the State intended to use Officer Fields as an expert witness on intent. Mr. Mills asked for a two-week continuance to prepare for this unanticipated testimony. The trial court denied Luis' request for a continuance but did recess the trial for one hour so that Mr. Mills could review Officer Fields' personnel file.
When the trial resumed, the State elicited testimony from Officer Fields that, in his experience, the most common container for carrying crack cocaine is a cigar tube. Officer Fields also testified that an individual who uses crack cocaine will usually have some type of device for smoking it in their possession: "[Y]ou'll very rarely find crack cocaine on a user, you'll find a pipe with residue on it." Officer Fields testified that the factors to be considered in determining whether drugs are intended for personal use or for sale are (1) the type of packaging used; (2) the quantity of cocaine found; (3) the amount and type of money found on the person; (4) any devices found for using the cocaine; and (5) the street value of the cocaine.
After offering this testimony, the State elicited the following from Officer Fields:
Q Officer Fields, based on the training and experience and schooling you've had in the area of street level drug investigations, and your own personal experience working undercover in the field, and the individual facts of this case involving Mr. Luis, do you have an opinion as to whether Mr. Luis' possession of the alleged  or his alleged possession of the cocaine in this case was for his own personal use or for sale to others?
A For sale to others.
After the State rested, Luis testified in his own defense. He admitted that he had run from the police but denied that he had possessed or dropped the cigar tube. He also denied telling the police that he had just started selling cocaine. He also testified that he had $131 in his pocket because he had just cashed his social security check. Luis introduced a copy of the canceled check into evidence. After deliberations, the jury found Luis guilty as charged.
In this appeal, Luis contends that the State committed a discovery violation by not designating Officer Fields as an expert witness on its discovery exhibit and that the trial court's actions failed to cure the prejudice that resulted from the violation. We agree.
Florida Rule of Criminal Procedure 3.220(b)(1)(A)(i)(7) specifically requires the State to provide a defendant who has elected to participate in discovery with the following information:
(A) a list of the names and addresses of all persons known to the prosecutor to have information that may be relevant *776 to any offense charged or any defense thereto, or to any similar fact evidence to be presented at trial under section 90.404(2), Florida Statutes. The names and addresses of persons listed shall be clearly designated in the following categories:
(i) Category A .... (7) expert witnesses who have not provided a written report and a curriculum vitae or who are going to testify to test results or give opinions that will have to meet the test set forth in Frye v. United States, 293 F. 1013 (D.C.Cir.1923).
Here, while Officer Fields was not going to testify to test results or other information requiring a Frye determination, he also did not provide a written report and a curriculum vitae. Therefore, under the plain language of rule 3.220(b)(1)(A)(i)(7), the State was required to designate Officer Fields as an expert witness.
The State argues that because it listed Officer Fields as a category A witness on its discovery exhibit, it was not also required to indicate that he would testify as an expert. This argument has two flaws. First, the State designated its Florida Department of Law Enforcement witness as an expert witness on the same discovery exhibit. Therefore, the State clearly believed that it had some obligation to designate which category A witnesses were experts, but it chose not to designate Officer Fields as such. At best, this was misleading. See State v. Evans, 770 So.2d 1174, 1182 (Fla.2000) (noting that furnishing misleading or inaccurate discovery is tantamount to furnishing no discovery at all and may be a violation of the discovery rules). Second, the supreme court has noted that rule 3.220 imposes an obligation on the State to provide the defense with a list of the expert witnesses it intends to call at trial. See Kearse v. State, 770 So.2d 1119, 1127 (Fla.2000) (upholding rule 3.202 against a constitutional challenge that it provided one-sided discovery by noting that rule 3.220 "spells out very specific discovery obligations" by both parties, including the obligation to provide a list of experts). Therefore, the State's failure to designate Officer Fields as an expert witness constituted a discovery violation.
Because the State committed a discovery violation, it was incumbent on the trial court to conduct a Richardson hearing. Pursuant to Richardson v. State, 246 So.2d 771, 774-75 (Fla.1971), the trial court was required to determine whether the State's discovery violation was (1) inadvertent or willful, (2) trivial or substantial, and (3) prejudicial to Luis' trial preparation. In this case, the trial court held what can only be termed as a de facto Richardson hearing. The trial court asked the State whether it had designated Officer Fields as an expert. The State replied that it had not. The trial court then asked Mr. Mills how his trial preparation had been prejudiced. After Mr. Mills told the trial court how he was prejudiced, the trial court recessed the trial for one hour so that Mr. Mills could review Officer Fields' personnel file. The trial court did not make any findings as to whether the discovery violation was inadvertent or willful or whether it was trivial or substantial, and, while the trial court apparently believed that the omission had prejudiced Luis to some degree, it made no such finding on the record. It did, however, fashion a remedy by allowing a one-hour recess so that Mr. Mills could review Officer Fields' personnel file.
Luis argues that the remedy fashioned by the trial court was insufficient to cure the prejudice that resulted from the State's discovery violation. Again, we agree. While Mr. Mills did have the opportunity to review Officer Fields' personnel file, he told the trial court that he *777 would have altered his case presentation had he known that Officer Fields was going to testify as an expert. Moreover, common sense indicates that given the critical nature of this testimony, Mr. Mills' deposition of Officer Fields would have been different had he known that Officer Fields would be testifying as something other than a simple fact witness. Allowing Mr. Mills to simply review Officer Fields' personnel file did little, if anything, to cure the prejudice created by this new and unanticipated expert testimony.
Moreover, contrary to the State's assertions, the discovery violation was not harmless. While a violation of the discovery rules and the failure to conduct a proper Richardson hearing may be harmless error, this is true only when the appellate court can clearly determine from the record that the violation would have had no effect on the defendant's trial preparation. Pender v. State, 700 So.2d 664, 666 (Fla.1997). We cannot make such a determination in this case. Other than the testimony from Officer Fields, the only evidence establishing that Luis had any intent to sell the cocaine was his alleged post-Miranda statement that he had "just started selling cocaine." Luis denied making this statement. Therefore, prior to trial, the State had little proof on this critical issue. The introduction of undisclosed expert testimony that bolstered an essential element of the State's case was clearly prejudicial to Luis and his trial preparation, and this prejudice is apparent from the record. Accordingly, the violation was not harmless.
Because Luis was prejudiced by the State's discovery violation and the trial court's remedy was insufficient to cure the prejudice, we reverse Luis' conviction and remand for a new trial. On remand, the State may again offer Officer Fields as an expert witness if he is properly designated and qualified as such. Because Officer Fields may again testify on remand, we address the proper scope of his testimony to guide both the State and the trial court.
At trial, Officer Fields testified as to the circumstances surrounding Luis' possession of the cocaine. He also testified as to what he would expect to find on a "typical" drug user and on a "typical" drug seller. He then testified concerning the factors that should be considered in deciding whether a particular quantity of drugs is for personal use or for sale. From this testimony, the jury could have reached its own conclusion based on the facts of the case as to whether Luis intended to sell the cocaine in the cigar tube. We agree that this testimony was admissible once Officer Fields was qualified as an expert in street-level narcotics transactions. However, Officer Fields also testified that, in his personal opinion, Luis intended to sell the cocaine. This testimony was improper.
Numerous cases have held that a qualified expert witness may testify that the quantity and packaging of drugs and the circumstances surrounding their possession are "consistent with" possession for sale or are "inconsistent with" possession for personal use. See, e.g., Damen v. State, 793 So.2d 106, 108 (Fla. 2d DCA 2001); Adams v. State, 696 So.2d 773 (Fla. 2d DCA 1996); Melton v. State, 824 So.2d 948 (Fla. 1st DCA 2002); Ramos v. State, 798 So.2d 4, 6 (Fla. 4th DCA 2001); Bruce v. State, 616 So.2d 504 (Fla. 3d DCA 1993). However, there is a split of authority as to whether a qualified expert may testify to the defendant's actual intent. The First District has held that it is improper for an expert to testify that the defendant intended to sell the drugs because that testimony simply tells the jury how to decide the case rather than helping the jury reach its own decision on intent. See Melton, 824 So.2d *778 at 951; Lewis v. State, 754 So.2d 897, 902 (Fla. 1st DCA 2000). To the contrary, the Third and Fourth Districts have allowed qualified experts to testify to the defendant's intent. See Prescott v. State, 753 So.2d 568, 569 (Fla. 4th DCA 1998) (holding that there was no abuse of discretion in allowing an expert witness to testify that the drugs were intended for sale rather than personal use); Scarlett v. State, 704 So.2d 615, 616 (Fla. 4th DCA 1997) (same); Bruce, 616 So.2d at 504 (same).
We agree with the First District that expert testimony concerning the defendant's intent crosses the line from providing expert testimony to simply telling the jury how to decide the case. Moreover, expert testimony concerning a defendant's intent is improper when the proffered expert has no expertise in the inner workings of the defendant's mind. Cf. Damen, 793 So.2d at 109 (noting with approval the witness's statement that he was not qualified to offer testimony concerning the inner workings of the defendant's mind and so could not testify as to the defendant's actual intent). Therefore, on remand, Officer Fields may not testify as to his opinion of Luis' intent. We certify conflict on this issue with Prescott and Bruce.
Reversed and remanded.
ALTENBERND, C.J., and SALCINES, J., Concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).