GUNTHER, J.
Edmund Shibble was convicted of two counts of aggravated battery with a deadly weapon and sentenced to two fifteen-year consecutive sentences of imprisonment. He appeals his convictions and sentences on two grounds, including one asserting a discovery violation related to the impeachment of an expert witness. We find only this ground of merit, and will discuss it in this opinion.
On July 31, 2000, Shibble was living at Lakeside Apartments in Fort Lauderdale. Shibble was regularly disruptive at the complex, and following a yelling incident around 8:00 p.m., Lakeside Management determined that it was necessary to evict Shibble. At 11:00 p.m., Lakeside manager Richard Abravaya went to Shibble’s apartment to notify him that he was being evicted. Tenant Joseph Churchville accompanied Abravaya for unclear reasons. Abravaya knocked on Shibble’s door and called his name, but received no response. Abravaya heard loud noises emanating from the apartment so he increased the volume of his knocking. Shibble’s roommate, Derrick Hoven, opened the door with Shibble standing next to him. Shib-ble then stabbed Abravaya and Church-ville before either entered the apartment.
At trial, Shibble raised an insanity defense. Shibble called Dr. Michael Walczak to testify as an expert in forensic neurop-sychology. Following review of medical records and eight hours of examination, Walczak testified that he concluded Shib- *667 ble suffered from several mental conditions and was insane at the time of the stabbings. Walczak was the only expert scheduled to be called by Shibble in support of his insanity defense.
On cross-examination, the State questioned Walczak as follows:
PROSECUTOR: What about recommending doctors that would support your own position? Have you ever done that?
WALCZAK: No. I recommended doctors that I know have knowledge of the things we’re talking about in certain types of injuries. I never recommend doctors because I believe they would support my opinion.
PROSECUTOR: What about recommending doctors because you believe that they might support your opinion in providing a positive outcome for somebody?
WALCZAK: No.
PROSECUTOR: Never done that?
WALCZAK: No. As a matter of fact, I would refer somebody to an EEG specialist because I know that person has specialty in that area, which is what I wanted to do in this case here.
The State then began questioning Walczak about his evaluation of a defendant in an unrelated case, Nigel Dickson. The prosecutor had obtained a copy of Walczak’s confidential report regarding Dickson from Dickson’s attorney, as she was also prosecuting Dickson’s case.
In further questioning Walczak about whether it was never his practice to recommend doctors who would give positive outcomes for his clients, the prosecutor attempted to have Walczak identify the Dickson report as one he had prepared and signed. Shibble’s counsel objected to questioning related to the Dickson report on the grounds of relevance and discovery violation. During the bench conference, the trial court, without conducting a Richardson[1] hearing, overruled the objection based on the State’s argument that: (1) the report was no longer confidential and thus discoverable due to Dickson’s disclosure and (2) there is an exception to the Richardson rule for impeachment evidence.
After refreshing Walczak’s recollection with the Dickson report, the prosecutor proceeded to question him about the statement in the Dickson report:
PROSECUTOR: In evaluating Mr. Dickson isn’t it true that you told his attorney at the end that it would be prudent to have other evaluations performed in hope to get a collection of insane reports that you believe is reasonable. You told his attorney the problem he faces is that some doctors may be cursory in their approach and see only the personality disorder, possibly pick up on the attempt to deceive, and ignore the clinical diagnosis that’s present. You then tell his attorney to call you if he needs to know suggestions for doctors that would give him a positive outcome.
WALCZAK: Correct.
PROSECUTOR: It’s still your testimony that you don’t do that?
WALCZAK: It doesn’t come across that way. I spoke with [Dickson’s attorney] about that and told her I was referring her to two psychologists who specialized in that disorder he showed me.
PROSECUTOR: Well, are you disputing the words that are on here?
WALCZAK: No. I’m not disputing the words.
*668 PROSECUTOR: So you could recommend doctors who would provide her with a positive outcome?
WALCZAK: What I believe would be people who understand it versus somebody who would just do a cursory interview.
Shibble’s counsel’s request to place the entire page containing the statement on which this line of questioning was based or the full report in evidence so that the context of Walczak’s statement could be considered was denied.
On re-direct, Walczak explained that the Dickson statement meant that he would refer a defendant to a doctor that would do a full examination, creating a medically-positive outcome for the defendant. Because of the State’s impeachment method, the door was opened for Shibble’s counsel to question Walczak regarding how often he finds a defendant insane. Walczak responded that he averages two insanity diagnoses per year.
The State called Dr. John Spencer as a psychological expert. Spencer testified that he did not review Shibble’s medical records and that he spent only forty-five minutes examining Shibble, but concluded Shibble was not insane at the time of the crime.
In closing argument, the State re-emphasized Walczak’s statement in the Dickson report:
PROSECUTOR: Don’t think for a second that this person who when I showed him his report that he had done on another defendant when he had no idea that would come back to bite him in his behind. I showed him the report. I said did you evaluate this defendant? Yes. Is that your report? Yes. Authored by you? Yes. Did you sign it? Yes. Right there at the bottom if you need recommendations for other doctors that will guarantee — guarantee. That’s a pretty strong word. Guarantee you positive results, let me know. If you need recommendations for other doctors that will guarantee you a positive result, let me know. Should you believe anything he said?
During deliberations, the jury requested a copy of the page of the Dickson report containing Walczak’s statement, but was not permitted to review the page because it had never been admitted into evidence. The jury then convicted Shibble.
Shibble contends that the trial court erred by overruling the objection to the Dickson report, because the use of the report as a basis for cross-examination questioning constituted a harmful discovery violation. Florida Rule of Criminal Procedure 3.220(b)(l)(K) requires the State to disclose any tangible papers intended for use at trial that are not obtained from or do not belong to the defendant. The impact of this discovery violation, or any discovery violation, should be considered at a Richardson hearing. See Acosta v. State, 856 So.2d 1143 (Fla. 4th DCA 2003). There is no exception to the Richardson hearing requirement for impeachment evidence. Portner v. State, 802 So.2d 442, 446 (Fla. 4th DCA 2001); Guerrie v. State, 649 So.2d 928, 929 (Fla. 4th DCA 1995).
The State contends that any error in allowing questioning based on the report or failing to conduct a Richardson hearing was harmless because the impeachment method allowed for testimony that Walc-zak averages two insanity diagnoses per year.
We conclude that the use of the Dickson report as a basis for questioning by the prosecutor was a clear discovery violation, as the report had not been disclosed to the defense and was not taken from the defendant’s possession or belong *669 ings in contravention of Rule 3.220(b)(l)(K). As a result, the trial court erred by not conducting a Richardson hearing prior to ruling on the admissibility of the Dickson report.
We recognize that the failure to conduct a Richardson hearing is no longer considered per se reversible error. State v. Schopp, 653 So.2d 1016, 1020 (Fla.1995); Portner, 802 So.2d at 446. However, we conclude, that in this case, the failure to conduct a Richardson hearing was not harmless. As the Florida Supreme Court held:
In determining whether a Richardson violation is harmless, the appellate court must consider whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense. As used in this context, the defense is procedurally prejudiced if there is a reasonable possibility that the defendant’s trial preparation or strategy would have been materially different had the violation not occurred.
Schopp, 653 So.2d at 1020.
We conclude that there was a reasonable possibility that the Dickson report procedurally prejudiced Shibble because it went to the very heart of his defense. Shibble’s defense strategy was insanity and he selected a single expert witness to support that theory. The prosecutor’s line of questioning purportedly based on a single statement from the Dickson report, never itself read to the jury, enabled Walczak’s credibility to be challenged without any opportunity for preparation to meet the challenge or retain an additional expert to corroborate the insanity defense.
The error cannot be deemed harmless because not only did the prosecutor reemphasize the Dickson statement in closing argument, but also referred to it as a guarantee, a word which was never used during cross-examination. Additionally, the jurors specifically asked to review the report and examine the statement with their own eyes and minds. As a result, it can be assumed that the questioning based on the prosecutor’s interpretation of the statement influenced the jury’s verdict, without Shibble being permitted to introduce the report into evidence so that the context of the expert’s comments could be evaluated by the jury.
Therefore, the State’s reliance on the undisclosed report cannot be considered harmless. We reverse and remand on this point, and affirm in all other respects.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED for a new trial.
FARMER, C.J. and GROSS, J., concur.

. Richardson v. State, 246 So.2d 771 (Fla.1971).