CIKLIN, J.
Scott Kipp appeals his convictions and sentences for three counts of felony animal cruelty and seventeen counts of misdemeanor animal cruelty. Kipp contends that the trial court should have held a *881 Richardson[1] inquiry when Kipp objected to the presentation of expert testimony of a witness not listed as an expert and to the prosecutor’s use of undisclosed impeachment evidence during the cross-examination of Kipp. We agree and reverse and remand for a new trial.
The evidence presented at Kipp’s jury trial revealed that officers from the Palm Beach County Animal Care and Control Department visited Kipp’s residence and discovered numerous dogs with a variety of ailments. One dog’s muscles were atrophied, her paw pads were raw, and she had urine burns on her legs. She could not stand and had to be carried out of her cage. Another animal had severe entro-pion, a painful condition causing the eyelid to rub the cornea. Her eyeballs were atrophied and her paw pads were also raw. A third dog had severe entropion and appeared to suffer from glaucoma. Seventeen other dogs suffered from various conditions, including entropion, severe ear infections, malnourishment, open fly bites, open sores, and bloody diarrhea.
In its witness disclosure exhibit, the state listed a veterinary assistant, Cathleen Brandow, as a Category A witness but did not designate her as an expert witness. At trial, the state called six witnesses, only one of whom was identified as having a veterinarian-related background. Brandow, a veterinary assistant, began her testimony by providing a lengthy recitation of her experience treating animals and “relaying symptoms and the findings of exams to the veterinarians.” Believing the state sought to treat Brandow as an expert, Kipp objected based on the state’s failure to designate her as an expert on its witness list. The state responded by assuring the trial court that it would not elicit expert opinion testimony from Brandow. Nevertheless, Brandow testified about the dogs’ symptoms and the diagnoses they would support, and then testified specifically about each dog’s symptoms. Much of her testimony was prefaced with an ac-knowledgement that it was based on her experience, background, and clinical work. The trial court permitted Brandow’s testimony despite repeated defense objections. Kipp was found guilty as charged, adjudicated, and sentenced.
On appeal, Kipp asserts the trial court erred in overruling his objection and by failing to conduct a Richardson inquiry as a result of the state’s failure to disclose that Brandow would be called to testify as an expert.
“Under Richardson, when a discovery violation is alleged, the standard of appellate review is whether the trial court abused its discretion in determining if a violation occurred and if so, whether it was inadvertent, and not prejudicial to the preparation of the defense.” Mascolo v. State, 774 So.2d 827, 829 (Fla. 4th DCA 2000).
Florida Rule of Criminal Procedure 3.220(b)(l)(A)(i) requires the state to disclose “expert witnesses who have not provided a written report and a curriculum vitae or who are going to testify.” It is not enough to list such witnesses as Category A witnesses; the state is also required to indicate that the witness will testify as an expert. See Thomas v. State, 63 So.3d 55, 59 (Fla. 4th DCA 2011) (finding the state violated its discovery obligation when it listed an officer as a Category A witness but failed to designate him as an expert, and officer testified as an expert in street level drugs); Luis v. State, 851 So.2d 773, 776 (Fla. 2d DCA 2003) (holding that where the state intended to qualify an officer as an expert in narcotic *882 investigations, state’s failure to indicate in its discovery exhibit that the officer was an expert witness constituted a discovery violation).
The record clearly reveals that Bran-dow’s testimony went beyond factual observations of such matters as the appearance and behavior of the dogs found at Kipp’s home. In fact, she also testified generally about the signs of malnourishment, dehydration and infection in animals, much of which are not obvious to laypersons. She also provided diagnoses and descriptions of two eye conditions, entro-pion and glaucoma. The following exchange occurred during Brandov/s testimony.
Prosecutor: So we were talking about science of malnourishment that you’ve observed in your work with dogs.... How about their teeth? You said that the dentistry is a real area of interest for you.
[[Image here]]
Brandow: You would get a lot of tartar buildup.
[[Image here]]
Prosecutor: Okay. What about lethargy, or just not moving around?
Brandow: Same thing. Being lethargic definitely is a sign of dehydration. They’re not getting what they need. The dehydration is off the homeostasis of the body’s chemistry and it’s going to cause the animal to .... So it’s going to cause the animal to act certain ways and tired.
[[Image here]]
Prosecutor: What have your observations been about the nature of the discharge in a dehydrated dog, would it be thicker?
Brandow: Yes.
[[Image here]]
Prosecutor: Now, based on your background, clinical work ... the color and the thickness of the nasal and the ocular discharge, does that indicate dehydration?
[[Image here]]
Brandow: It could definitely be from— she was severely dehydrated.
[[Image here]]
Prosecutor: The color of it, did it have some significance based on your work in the clinical setting ....
Brandow: Yes. It indicates bacteria.
[[Image here]]
Prosecutor: And what can you tell us about what you saw about this particular female Shar Pei out at the setting?
Brandow: Okay. This dog appeared to me with chronic eye problems. She had severe entropion.
Prosecutor: What’s that?
[[Image here]]
Brandow: Entropion is a condition where the eyelid folds inwards and it rubs against the cornea. It’s a very painful condition, as you can imagine, if you had a speck of sand or an eyelid in your eye constantly, all the time.
[[Image here]]
Prosecutor: And what was it that you saw with your eyes about her eyeball?
Brandow: [I]t appeared that she had glaucoma....
Prosecutor: Would [the pressure from the glaucoma] be painful?
Brandow: Yes. It would be something that you would definitely need to—
Prosecutor: Address?
Brandow: Address, yes.
[[Image here]]
Prosecutor: What if anything does the tissue of a dog’s ear look like with untreated infection?
*883 Brandow: The normal defense mechanism is for inflammation to occur. That’s the first healing process. And most of the time the most painful of it is on the inner ear canal where it swells, it becomes extremely painful. The animal will try to maybe dig at it itself. And it can cause outer lesions as well to the outside of the ear.
Prosecutor: What does it do to a dog’s balance?
Brandow: It can cause a disbalance. Any kind of inner ear infection can cause a disbalance.
Prosecutor: Okay, Now, [another dog,] Hope ... She had severe ear infections?
Brandow: Yes.
Prosecutor: Would that also supply an explanation for one of the many reasons why she couldn’t get up?
Brandow: It could have supplied one of the reasons, yes.
This testimony required specialized knowledge and experience. Thus, Bran-dow was indeed testifying as an expert. See § 90.701, Fla. Stat. (2010) (providing that under certain circumstances recited in the statute, a lay witness may provide opinion testimony when the “opinions and inferences do not require a special knowledge, skill, experience, or training”); § 90.702, Fla. Stat. (2010) (“If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.”).
If there is a possibility of a discovery violation, “the trial court must inquire as to whether the violation (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party’s trial preparation.” Thomas, 63 So.3d at 59 (citation and quotation marks omitted). Further,
Where a discovery violation has occurred, the failure to conduct a Richardson hearing is not per se reversible error, but rather is subject to a harmless error analysis. See State v. Schopp, 653 So.2d 1016, 1020-21 (Fla.1995). The relevant inquiry is “whether there is a reasonable possibility that the discovery violation ‘materially hindered the defendant’s trial preparation or strategy.’ ” Scipio v. State, 928 So.2d 1138, 1150 (Fla.2006) .... An analysis of procedural prejudice “considers how the defense might have responded had it known about the undisclosed piece of evidence and contemplates the possibility that the defense could have acted to counter the harmful effects of the discovery violation.” Scipio, 928 So.2d at 1149.
Durrance v. State, 44 So.3d 217, 221 (Fla. 4th DCA 2010).
The state’s burden to show a discovery violation to be harmless is “extraordinarily high.” Hicks v. State, 45 So.3d 518, 524 (Fla. 4th DCA 2010) (quoting Cox v. State, 819 So.2d 705, 712 (Fla.2002)). “ ‘[T]he vast majority of cases’ will not have a record sufficient to support a finding of harmless error.” Scipio, 928 So.2d at 1148 (Fla.2006) (quoting Schopp, 653 So.2d at 1021 (Fla.1995)).
The state contends Kipp was not procedurally prejudiced because, ten months prior to trial, he requested a continuance to depose Brandow. In Kipp’s motion for continuance, Kipp informed the court that others had suggested Brandow was a veterinary technician, and therefore Kipp needed “time to investigate her findings and possibly retain a veterinarian.” *884 This, the state asserts, shows Kipp’s awareness of the nature of the testimony Brandow would give.
The record reflects that Kipp did depose Brandow prior to trial, but a transcript of the deposition is not part of the record before us. As such, we are unable to determine if Kipp, based on Brandow’s deposition testimony, knew she would testify as an expert and go beyond mere factual observations. See Casica v. State, 24 So.3d 1236, 1241 (Fla. 4th DCA 2009) (“Because it is the State’s burden to show that the error was harmless, the State must show in the record that the defendant was not prejudiced by the discovery violation.” (citation omitted)). A proper Richardson inquiry could have fleshed out whether Kipp was aware that Brandow would testify as she did. See Raffone v. State, 483 So.2d 761, 763 (Fla. 4th DCA 1986) (“ ‘A Richardson hearing is designed to ferret out procedural prejudice occasioned by a party’s discovery violation.’ ” (citations omitted)).
Kipp also argues that the trial court erred in permitting the state to impeach him with previously undisclosed documentary evidence of his prior contacts with Palm Beach County Animal Care and Control dating back to 1992. Pursuant to Florida Rule of Criminal Procedure 3.220(b)(l)(K), the state was required to disclose the records of Kipp’s prior contacts with Animal Care and Control. The rule requires the state to do the following:
[T]he prosecutor shall serve a written Discovery Exhibit which shall disclose to the defendant and permit the defendant to inspect, copy, test, and photograph the following information and material within the state’s possession or control ... any tangible papers or objects that the prosecuting attorney intends to use in the hearing or trial and that were not obtained from or that did not belong to the defendant.
Fla. R. Crim. P. 3.220(b)(l)(K). The trial court found no hearing or inquiry was necessary because the evidence was being used for impeachment purposes. There is, however, no impeachment exception to the Richardson hearing requirement. Shibble v. State, 865 So.2d 665, 668-69 (Fla. 4th DCA 2004) (holding that trial court erred in not conducting a Richardson hearing when state failed to disclose defense expert’s report in another case, which state used to impeach expert); Portner v. State, 802 So.2d 442, 446 (Fla. 4th DCA 2001) (finding that state violated discovery rules by not disclosing defendant’s statement in a deposition given in a related civil case, which the state sought to use to impeach the defendant); Guerrie v. State, 649 So.2d 928, 929 (Fla. 4th DCA 1995) (recognizing that where the state failed to disclose a cocaine pipe found in defendant’s purse, it could not impeach the defendant with the inadmissible evidence by eliciting testimony that she was not familiar with cocaine, as “[t]here is no exception to the Richardson rule for impeachment”) (citation omitted).
The state has failed to establish that Kipp was not procedurally prejudiced. If Kipp had known about the impeachment evidence, he may have refrained from making the statements that opened the door to its use or may have decided not to testify at all. See Portner, 802 So.2d at 446 (finding that state did not establish that defendant was not procedurally prejudiced by the surprise use of his civil deposition, and observing that if defendant had been aware that the state was prepared to impeach him with his contradictory testimony, he may not have testified and placed his credibility before the jury).
*885 In light of our holding, we find it unnecessary to discuss the remaining issues raised by the appellant.

Reversed and remanded for a new trial.

GROSS and MAY, JJ., concur.

. Richardson v. State, 246 So.2d 771 (Fla.1971).