# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D21-2957
LT Case No. 2019-CF-001073-A

_____

JUSTICE MICHAEL GUROLLA,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Citrus County.
Richard A. Howard, Judge.

Rick A. Sichta and Susanne K. Sichta, of The Sichta Firm, LLC,
Jacksonville, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Roberts J.
Bradford, Jr., Assistant Attorney General, Daytona Beach, for
Appellee.

September 8, 2023

WALLIS, J.

Justice Michael Gurolla (Appellant) appeals the judgment
and sentence entered after he was convicted of attempted second-
degree murder and discharging a firearm in public from a vehicle.
Appellant alleges that the trial court erred when it found that the

1

State did not commit a discovery violation by failing to disclose that its lead investigator would testify as an expert and in failing to conduct a *Richardson*[1] hearing on the matter.  We find that the investigator provided expert opinion testimony when he opined that the victim's injuries were not consistent with Appellant's claim that he shot at the ground instead of at the victim. Because the State failed to disclose this expert testimony before trial, the trial court should have held a *Richardson* hearing on the discovery violation.  Therefore, we reverse and remand for a new trial.

**Facts**

This case stems from an altercation between Appellant and the victim.  Appellant ultimately fired his gun from his vehicle and the victim received gunshot wounds in both of his legs.  As a result of these events, the State charged Appellant with one count of attempted first-degree murder with a firearm and discharging a firearm in public from a vehicle.  Appellant's defense at trial was that he fired the gun while aiming at the ground and lacked premeditation or an intent to kill the victim.

Approximately three weeks before trial, Appellant filed a motion in limine, seeking to exclude opinion testimony from the lead investigator, Sergeant Michael Laborda, or others regarding the "would be" trajectory of the projectiles that were fired from Appellant's vehicle toward the victim.  The motion in limine argued that this testimony should be prohibited because the witnesses did not know the location of the victim and Appellant when the gun was fired and the testimony would lack any foundation because there was no reconstruction of the crime scene. Noticeably absent from the motion was any mention of medical opinion testimony as to how the gun or its ammunition caused the victim's specific injuries.  The trial court denied the motion in limine.

At trial, Sergeant Laborda provided opinion testimony about different aspects of firearms and ammunition, including hollow-point bullets.  He also testified that the injuries sustained by the victim were not consistent with Appellant's theory that he aimed

---

[1] *Richardson v. State,* 246 So. 2d 771 (Fla. 1971).

the gun straight at the ground when he fired. During Sergeant Laborda's testimony, the following relevant exchanges occurred:

PROSECUTOR: Okay. And where—sorry. Can you go show your arm where he was again?

SGT. LABORDA: He said he was like this pointing down like this.

PROSECUTOR: Straight down to the ground?

SGT. LABORDA: Yeah.

PROSECUTOR: Okay. Based on your knowledge of—of firearms—you said you've been on SWAT for—for three years—is that consistent with the injuries sustained by the victim?

. . . .

SGT. LABORDA: No, that is not consistent.

. . . .

PROSECUTOR: Sorry. I almost forgot. Typically, when you have fired rounds of hollow-point ammunition in the past, when it hits the ground, what happens to the projectile?

SGT. LABORDA: It fragments into multiple pieces.

PROSECUTOR: Okay. So are the wounds sustained by the victim, which you saw, consistent with a wound that would have come from a fragmented bullet like that?

SGT. LABORDA: No.

3

PROSECUTOR: Okay. Why do you say that?

SGT. LABORDA: Fragmented bullet typically leaves more of a slicing or a cutting type of a wound because the jacket and the round comes apart.

. . . .

SGT. LABORDA: The—the lead and the jacket and the round comes apart and becomes small little sharp objects. So they create more of a slicing wound where an impact round creates more of a punch hole.

During cross-examination, defense counsel asked Sergeant Laborda if it was more likely that Appellant shot at the ground and the bullet ricocheted off of the driveway and hit the victim. Sergeant Laborda answered that he did not see any evidence supporting that version of events because there were no marks on the ground and there was no evidence that the bullet was fragmented when it struck the victim. Sergeant Laborda further testified that he had never seen a bullet hit concrete and not fragment.

After the State rested, Appellant testified that the victim was aggressive during their encounter. Appellant admitted that he shot his firearm from his vehicle, but he claimed that he shot at the ground and he denied shooting at the victim.

**Analysis**

"Florida law allows an expert witness to testify if specialized knowledge will assist the jury in understanding the evidence or in determining a fact in issue, provided the testimony can be applied to the evidence at trial." *Gamble v. State*, 644 So. 2d 1376, 1377 (Fla. 5th DCA 1994). A witness who is "qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise," if certain requirements are met. § 90.702, Fla. Stat. (2021).

4

The Florida Supreme Court has explained that a "witness may be qualified as an expert through specialized knowledge, training, or education, which is not limited to academic, scientific, or technical knowledge. An expert witness may acquire this specialized knowledge through an occupation or business or frequent interaction with the subject matter." *Chavez v. State*, 12 So. 3d 199, 205 (Fla. 2009). Thus, courts have found that law enforcement officers may testify as experts when the "opinion is based on specialized knowledge derived from training or experience and beyond the understanding or experience of the average juror." *Jackson v. State*, 89 So. 3d 1011, 1020 (Fla. 4th DCA 2012); *see Smith v. State*, 7 So. 3d 473, 497 (Fla. 2009) (explaining that "police officers have testified as expert witnesses regarding the street language in the drug culture and explained to the jury their interpretation of the words used, which occurred in contexts in which their normal lexicographical meanings would be illogical and meaningless"); *Roberts v. State*, 313 So. 3d 138, 139 (Fla. 4th DCA 2021) (concluding detective's testimony regarding the definition of the term "peter roll" was expert testimony).

In contrast to expert witnesses, lay witnesses generally "may not testify in terms of an inference or opinion, because it usurps the function of the jury." *Floyd v. State*, 569 So. 2d 1225, 1231–32 (Fla. 1990). However,

> [i]f a witness is not testifying as an expert, the witness's testimony about what he or she perceived may be in the form of inference and opinion when:
>
> (1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
>
> (2) The opinions and inferences do not require a special knowledge, skill, experience, or training.

5

§ 90.701, Fla. Stat. (2021). "Lay witness opinion testimony is admissible if it is within the ken of an intelligent person with a degree of experience." *Floyd*, 569 So. 2d at 1232. Furthermore, opinion testimony of a lay witness is only allowed "if it is based on what the witness has personally perceived." *Fino v. Nodine*, 646 So. 2d 746, 748 (Fla. 4th DCA 1994). Therefore, "lay opinion testimony typically involves matters such as distance, time, size, weight, form and identity." *Id.* at 748–49.

Finally, the State is required to disclose to the defense "expert witnesses who have not provided a written report and a curriculum vitae or who are going to testify." Fla. R. Crim. P. 3.220(b)(1)(A)(i). The failure to designate a witness in discovery as an expert witness constitutes a discovery violation. *Luis v. State*, 851 So. 2d 773, 776 (Fla. 2d DCA 2003). When the State commits a discovery violation, the trial court must conduct a *Richardson* hearing to determine whether the State's failure to comply with the discovery rules prejudiced the defendant. *Bess v. State*, 208 So. 3d 1213, 1214 (Fla. 5th DCA 2017).

We conclude that Sergeant Laborda's testimony that: (1) hollow point bullets fragment into pieces when they ricochet off the ground; (2) bullet fragments cause more slicing or cutting type wounds than whole bullets; and (3) the victim's wounds were inconsistent with being caused by bullet fragments, was expert opinion testimony rather than lay opinion testimony because it was not "within the ken" of the average juror. Instead, it was presumably based on Sergeant Laborda's specialized experience as a police officer. *See Floyd*, 569 So. 2d at 1232 (concluding that police officers' testimony that the victim's injuries appeared to have occurred at the same time and that the wound to the top of the victim's hand was a defensive wound required "special knowledge, skill, experience, or training" and, therefore, it was error to allow that opinion testimony without requiring the State to establish that officers were experts); *Fittipaldi USA, Inc. v. Castroneves*, 905 So. 2d 182, 185 (Fla. 3d DCA 2005) (explaining that witness's legal conclusions depended on the use of his legal experience and specialized training and, therefore, it should have only been admitted as expert testimony under section 90.702).

In addition, Sergeant Laborda's testimony was not based on his perception of the shooting and, therefore, it was not appropriate lay opinion testimony. *See Kolp v. State*, 932 So. 2d 1283 (Fla. 4th DCA 2006) (concluding that trial court erred in allowing lay witness to offer testimony about purpose of hollow-point bullets where that testimony was not related to witness's perception).

Because Sergeant Laborda offered expert testimony on the subject of the victim's injuries and whether they were consistent with Appellant shooting at the ground, the State was required to disclose him during discovery as an expert witness. *See* Fla. R. Crim. P. 3.220(b)(1)(A)(i); *Luis*, 851 So. 2d at 776. The State's failure to do so was a discovery violation and the trial court should have held a *Richardson* hearing on the matter. *See Bess*, 208 So. 3d at 1214; *Luis*, 851 So. 2d at 776.

While the trial court's failure to hold a *Richardson* hearing is not per se reversible error, "harmful error is presumed." *M.H. v. State*, 151 So. 3d 32, 37 (Fla. 3d DCA 2014). An appellate court will only find that the failure to hold a *Richardson* hearing is harmless error if it "can ascertain, beyond a reasonable doubt, that there is no reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred." *Bess*, 208 So. 3d at 1214; *see Scipio v. State*, 928 So. 2d 1138, 1148–49 (Fla. 2006) (explaining that harmless error analysis in discovery violation cases does not focus on substantive prejudice, i.e. whether the discovery violation would have made a difference in the verdict).

Although the State claims that any error was harmless, it erroneously focuses on substantive prejudice rather than whether Appellant was procedurally prejudiced by the discovery violation. *See Scipio*, 928 So. 2d at 1148–49. And, after a review of the record, we cannot conclude beyond a reasonable doubt that Appellant's trial preparation or strategy would not have been different had the discovery violation not occurred. If Appellant had been given advance notice that Sergeant Laborda would offer opinions regarding the victim's injuries and whether they were consistent with Appellant shooting at the ground, he might have retained medical or ballistics experts to counter the State's

evidence.[2]  Therefore, because we cannot determine whether Appellant was procedurally prejudiced by the State's discovery violation, it is impossible to conclude that the trial court's failure to hold a *Richardson* hearing was harmless error.  Accordingly, we reverse and remand for a new trial.[3]

REVERSED and REMANDED for a new trial.

HARRIS and PRATT, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

---

[2] The fact that Sergeant Laborda was deposed before trial does not alter our analysis.  The record on appeal does not contain a transcript of Sergeant Laborda's deposition and, therefore, we cannot determine whether Appellant was aware that Sergeant Laborda would offer expert testimony on these subjects.  *See Kipp v. State*, 128 So. 3d 879, 884 (Fla. 4th DCA 2013) (concluding that state failed to establish that appellant was not procedurally prejudiced by discovery violation, even though witness had been deposed before trial; deposition was not included in record and, therefore, it was unclear whether appellant knew about the expert testimony before trial).

[3] Given our decision to reverse and remand for a new trial, we decline to address Appellant's claim that the trial court committed fundamental error during the sentencing hearing.