DAMOORGIAN, J.
 

 The appellant, Alfonso Casica, was convicted of four counts of armed sexual battery and single counts of kidnapping and tampering with a witness or victim. He was sentenced to concurrent life sentences for the sexual battery charges and concurrent five-year sentences for the kidnapping charge and the tampering charge. We hold that the trial court erred in denying the appellant’s motion for mistrial based on the State’s discovery violation, and we reverse for a new trial on all charges.
 

 The charges against the appellant arose out of an attack on a woman (“the victim”) while she was on her way to work. The victim testified that she boarded a bus around 8:00 a.m. to go to work. A man got on the bus, stared at her, and gave her a dirty look. At trial, the victim identified the appellant as the man on the bus. After getting off the bus, the victim noticed that the appellant was following her. He grabbed her and forced her to walk behind some bushes.
 

 Meanwhile, one of the victim’s co-workers left work at 8:00 a.m. While driving down the street, she witnessed a man holding a woman around the neck and pulling her into the bushes. She called 911 to alert the police. Later in the evening, the co-worker gave a recorded statement to police. She was also shown a photo lineup, from which she identified the appellant as the man who had pulled the woman behind the bushes.
 

 After the appellant pulled the victim behind the bushes, he told her that he would kill her if she tried to scream. He also told her that he had a gun, although the victim testified that she never saw the gun. He then told the victim to get on her knees. He jumped on top of her and started choking her. As the victim lay on the ground, the appellant pulled her jacket over her head so that she could not see anything. He then sexually battered her.
 

 The appellant left the scene of the attack, and the victim got up and ran through the bushes to the road. She saw a truck and screamed for help. Because of the co-worker’s 911 call, the police arrived almost immediately. The victim ran to an officer’s patrol car and got in. Once in the car, she started “hitting everything, the windows, the car seat.” She described herself as going crazy. She was begging for help and was terrified. Although the officers were asking her questions, she could barely talk. Several minutes later, she gave the officers a description of the man who sexually battered her.
 

 When Officer King arrived at the scene, he saw the victim squatting with her face in her hands. She was covered in dirt and grass and appeared to be crying. He placed her in the back of his vehicle. Shortly thereafter, other officers arrived at the scene. Officer Powers saw the victim in the back of the police vehicle and testified that she was extraordinarily upset and had mud all over her clothes and hair. Detective Birkenheuer testified that the victim appeared visibly distraught, her entire head was red, she had bruising and scratches all over her, dirt in her hair and on her face, and was very shaken. She tried to calm the victim down.
 

 Detective Scopa arrived at the scene to find the victim in the back of Officer King’s vehicle. She was visibly shaken,
 
 *1239
 
 crying and upset. Officer McClaskey also responded to the scene. She observed the victim crying hysterically and shaking. The victim told Detective Scopa and Officer McClaskey that her attacker had a gun, although she did not actually see it.
 

 The officers took the victim to the sexual assault treatment center, where she was examined. Then, she went to the police station, where a detective showed her a photo lineup. She identified the appellant as her attacker in that lineup and again at trial.
 

 A manager from the victim’s workplace testified that the appellant was an employee of her store. He was scheduled to work on the day of the attack, and although he came into the store that day, he did not work. He told the manager that he was not feeling well and needed time off from work.
 

 Detective Heim arrested the appellant at his home later that day. At the police station, he and Detective Scopa spoke with the appellant, who complained of stomach pain and kidney stones. At some point, the appellant was taken to the hospital as a result of his pain. Detective Scopa had a search warrant for the appellant and supervised the collection of his DNA at the hospital.
 

 At trial, nurse Swaby testified that she performed the examination of the victim at the sexual assault treatment center. She took several specimens from her. The victim told Swaby that she was followed from the bus stop and pulled into a bushy area where she was assaulted. The victim denied seeing a weapon, but reported that her attacker threatened her with a gun. Defense counsel objected to these statements, arguing that they were hearsay and did not fit into any hearsay exception. The trial court overruled the objection and admitted the hearsay statements as statements made for purposes of medical diagnosis or treatment.
 

 Heather Whitten, a DNA analyst with the Broward County Sheriff’s Office, testified that she examined a pair of boxer shorts that were taken from the appellant. She took three samples from the shorts to analyze for DNA evidence. All three samples contained the DNA of at least two individuals, and she could not exclude the victim or the appellant as donors. The odds of randomly selecting an unrelated individual who could be included as a contributor to the DNA mixture were as follows: Sample one — 1 in 110; Sample two — 1 in 490; and Sample three — 1 in 1,200.
 

 Dr. Martin Tracey, the State’s DNA expert, testified that he tested the same samples that Whitten tested, but used a different testing method. He opined that it was 250,000 or 260,000 times more likely that the DNA from the boxer shorts belonged to the appellant and the victim than the appellant and an unknown individual. He used the FBI database to reach this conclusion. Defense counsel objected to this testimony and argued that there had been a discovery violation because the State failed to disclose this opinion prior to trial. Defense counsel told the court that Dr. Tracey’s deposition testimony was different than his trial testimony, and moved for a mistrial.
 

 The trial court conducted a Richardson
 
 [1]
 
 hearing, at which Dr. Tracey testified that he originally performed the DNA analysis using the National Institute of Standards and Technology (NIST) database. Using this database, he testified at his deposition that it was 800,000 times more likely that the DNA on the boxer shorts belonged to the appellant and the victim than the ap
 
 *1240
 
 pellant and some unknown person. After his deposition, the prosecutor sent Dr. Tracey a fax asking him to recalculate using the FBI database so that there would not be any problems with the calculation at trial. Dr. Tracey informed the court that the NIST database has not been used as frequently in criminal DNA cases as the FBI database, so he and the prosecutor decided it would be a good idea to do a calculation based on the FBI database. Dr. Tracey sent his new calculation back to the prosecutor. The prosecutor admitted that she did not send the new calculation to defense counsel. She could not recall whether she had a conversation with defense counsel about the new calculation.
 

 Defense counsel told the court that he was sure that he had never received the new calculation. He said that his strategy was to move to strike Dr. Tracey’s original testimony because he believed the DNA analysis using the NIST database was inadmissible. He did not make an opening statement in part so that he could challenge Dr. Tracey’s testimony when he took the witness stand. If the court struck Dr. Tracey’s testimony, the jury would be able to consider only Ms. Whitten’s DNA calculations, which were much more favorable to the defense than Dr. Tracey’s calculation. He believed that he could no longer challenge Dr. Tracey’s testimony because his new calculation based on the FBI database was admissible.
 

 The trial court ruled that there had been a discovery violation, although the violation was not willful. The court offered to adjourn the proceedings to give defense counsel a chance to re-depose Dr. Tracey. Defense counsel rejected this offer, telling the court that re-deposing Dr. Tracey would be futile because he would need to hire an expert before he could effectively challenge Dr. Tracey’s testimony. He explained that he had not yet hired an expert because he believed the court would strike Dr. Tracey’s original testimony. The court denied the motion for mistrial.
 

 The appellant argues that the trial court erred in denying his motion for mistrial because he was proeedurally prejudiced by the State’s discovery violation. The State does not dispute that it committed a discovery violation, but argues that the violation was harmless.
 
 [2]
 

 “When the State’s failure to comply with the rules of discovery is brought to the court’s attention, the court must conduct a
 
 Richardson
 
 hearing to determine if that failure has prejudiced the defendant.”
 
 Barrett v. State,
 
 649 So.2d 219, 221-22 (Fla.1994). The inquiry at that hearing is “whether there is a reasonable possibility that the discovery violation ‘materially hindered the defendant’s trial preparation or strategy.’ ”
 
 Scipio v. State,
 
 928 So.2d 1138, 1150 (Fla.2006) (quoting
 
 State v. Schopp,
 
 653 So.2d 1016, 1020 (Fla.1995)). An analysis of procedural prejudice “considers how the defense might have responded had it known about the undisclosed piece of evidence and contemplates the possibility that the defense could have acted to counter the harmful effects of the discovery violation.”
 
 Id.
 
 at 1149. It is immaterial whether the discovery violation would have made a difference to the fact finder in arriving at the verdict.
 
 Id.
 
 at 1150.
 

 A discovery violation is harmless only if an appellate court can determine, beyond a reasonable doubt, that the defense was not proeedurally prejudiced.
 
 Id.
 
 
 *1241
 
 Because it is the State’s burden to show that the error was harmless, the State must show in the record that the defendant was not prejudiced by the discovery violation.
 
 Schopp,
 
 653 So.2d at 1020.
 

 We hold that the State did not meet its burden of showing that the discovery violation was harmless. Although we agree with the trial court that the violation was not willful, the State’s failure to disclose the change in Dr. Tracey’s testimony materially hindered the appellant’s trial preparation. The appellant’s trial strategy with regard to Dr. Tracey would have been materially different had he known of the change. Instead of moving to strike Dr. Tracey’s testimony, the appellant’s counsel stated that he would have hired an expert witness to rebut that testimony. While the appellant might have hired an expert regardless of the discovery violation, he would not have been able to fully prepare that expert for trial without knowledge that Dr. Tracey used the FBI database, rather than the NIST database, for the DNA analysis.
 
 See Scipio,
 
 928 So.2d at 1145 (noting that a party can hardly prepare for an expert opinion that it does not know about).
 

 Re-deposing Dr. Tracey in the middle of trial, the trial court’s proposed solution, would not have been adequate to resolve the State’s discovery violation. The appellant still would have been without an expert witness to rebut Dr. Tracey’s testimony. This was especially harmful because the primary theory of the appellant’s defense was misidentification. Accordingly, we reverse the appellant’s convictions and remand for a new trial on all charges.
 

 The appellant raises several additional issues. First, he argues that the trial court erred in admitting hearsay statements made by the victim about the attack, especially the statement that her attacker had a gun. We hold that the statement the victim made to nurse Swaby that her attacker threatened her with a gun was erroneously admitted because it was not reasonably pertinent to the victim’s medical diagnosis or treatment.
 
 See Conley v. State,
 
 620 So.2d 180, 183-84 (Fla.1993). However, the error was harmless because that statement was cumulative to the victim’s testimony that the appellant told her he had a gun.
 
 See Torres-Arboledo v. State,
 
 524 So.2d 403, 408 (Fla.1988). It was also cumulative to statements the victim made to Detective Scopa and Officer McClaskey shortly after the attack. We hold that these statements, which came in through the officers’ testimonies, were properly admitted into evidence as excited utterances.
 
 See id.; see also
 
 § 90.803(2), Fla. Stat. (2007).
 

 The appellant’s argument that the trial court gave the jury an erroneous instruction on the charge of tampering with a victim is well-taken. The court improperly combined the elements of subsections (e) and (a) of section 914.22(1), Florida Statutes (2005). The appellant was charged with violating only subsection (e) and the jury .should have been instructed with the elements of that particular subsection.
 

 We find no merit to the appellant’s final two arguments. The trial court did not abuse its discretion in giving Florida Standard Criminal Jury Instruction 3.9(e) regarding the appellant’s out-of-court statements.
 
 See Charles v. State,
 
 945 So.2d 579, 582 (Fla. 4th DCA 2006) (generally, the trial court’s decision to give a requested jury instruction is reviewed for an abuse of discretion). Nor did the trial court err in denying the appellant’s motion for judgment of acquittal on the charge of tampering with the victim.
 
 See Burkell v. State,
 
 992 So.2d 848, 851 (Fla. 4th DCA 2008) (the standard for reviewing a trial court’s ruling on a motion for judgment of acquittal is de novo). The State presented
 
 *1242
 
 sufficient evidence from which the jury could have rationally found the elements of the crime beyond a reasonable doubt. See
 
 Horne v. State,
 
 997 So.2d 1262, 1264 (Fla. 4th DCA 2009). Nevertheless, we also reverse the appellant’s conviction for tampering with the victim and remand for a new trial because of the State’s discovery violation.
 

 Reversed and Remanded for a new trial on all charges.
 

 MAY and CIKLIN, JJ., concur.
 

 [1]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971).
 

 [2]
 

 . The State violated Florida Rule of Criminal Procedure 3.220(j) by failing to disclose the change in Dr. Tracey's opinion.