POLEN, J.
 

 Appellant, Jarvis Hicks, appeals his conviction for attempted first degree murder with a firearm. He argues that the trial court failed to conduct a Richardson
 
 [1]
 
 hearing upon learning that the State had failed to provide appellant written notice of the substance of his statement to Detective Foster, and failed to identify Foster as a witness to this statement, until the day of trial. We find that the State did not commit a discovery violation by failing to provide appellant with written notice of the substance of his statement. However, we agree with appellant that the State’s failure to identify Detective Foster as a “rebuttal to alibi witness” until the day of trial was a discovery violation. We reverse and remand for a new trial because the trial court did not conduct an adequate
 
 Richardson
 
 inquiry on the discovery violation, and we cannot conclude that the error was harmless.
 

 The charge arose following a drive-by shooting incident. Witnesses Otis Ramsey and Jesse Ulcena (the victim), testified at trial. Ramsey knew of appellant from a youth football league. He admitted he had previously identified appellant as the shooter, but explained that he was only sixteen years old at the time, and was part of a group being interviewed by the police all at once. Someone in the group said, “I think it was Jarvis [appellant],” and Ramsey agreed. At trial, Ramsey insisted he did not know the shooter, and that he told this to the investigating police officer.
 

 Ulcena said the car was within a few feet of him when he saw a hand emerge from the window holding a revolver. Ulce-na then saw the face of the gunman, who wore his hair in a “twists” hairstyle. The area was illuminated by a street light. Just as he saw the gun, Ulcena heard a single gunshot, turned and ran away. Two more gunshots fired. When Ulcena looked back, he saw the shooter’s face as the gun re-fired. When Ulcena went to run again, he felt a sharp pain in his back, causing him to fall to the ground.
 

 Ulcena acknowledged in his prior deposition testimony that he did not run or see the face of the shooter until the third shot fired. He also conceded that, while he
 
 *520
 
 testified at trial that the gun was chrome in color, in deposition he said he could not see the gun clearly because it was dark out.
 

 Ulcena identified appellant from a photographic lineup, and at trial. Ulcena was 100 percent certain that appellant was the shooter. He had never seen appellant before the incident. At the time of the incident, appellant had “twists” in his hair; at trial, he did not. Ulcena also identified the driver of the vehicle as a man known as “T-Black,” but conceded this identification turned out to be erroneous.
 

 In its discovery compliance submitted in November of 2006, the State advised that it had within its possession “Statements of defendant,” including oral statements to police officers.
 

 Appellant filed a notice of alibi in June 2007, and served his initial witness list, which consisted of Brett Smith, Jr., Ty-melle Jones and Jermaine Paul. He asserted that, at the time of the shooting, he was at a little league football game in Boynton Beach with the listed witnesses.
 

 The State deposed Brett Smith, Jr. in July of 2007. Smith, Jr. testified that appellant was with him the entire evening in question, and into the next day. Smith, Jr. stated that his parents, other family members and friends (including appellant) traveled in a caravan of vehicles from Deerfield Beach to Boynton Beach to attend the little league football game of Smith, Jr.’s younger brother. Smith, Jr. drove a car that his aunt, Susan Young, had rented. Appellant rode with him. Upon their return to Deerfield Beach, between 10:30 and 11:00 p.m., they went directly to the Smith residence, where appellant participated in a video football game tournament, and stayed the night.
 

 On September 27, 2007, the State filed supplemental discovery, submitting the following: “All documents, statements, police reports, Miranda forms, Defendant interview on DVD, and evidence related to case DR-O6-4980. Additional witnesses: All defense witnesses; Brett Smith, Jr., Tymelle Jones, Jermaine Paul, Brett Smith, Sr., and Stephanie Young.” The State did not include Detective Foster in this submission.
 

 However, six months later, on March 24, 2008, the first day of trial, the State filed additional supplemental discovery, listing Detective Foster as a witness.
 

 At the beginning of trial, the State discussed its supplemental discovery filing:
 

 [Prosecutor]: Your Honor, just — I just want to make sure that all of the supplemental discovery has been received. And we have an alibi witness in this case, and that alibi witness was supplied to the State and in response the State filed supplemental discovery and the witnesses on the supplemental discovery are all of the Defense witnesses, [as well as] Detective ... Foster from Broward Sheriffs Office.
 

 Also we have supplied the Defense with the entire file related to case number DR064980, and I just want that to be on the record....
 

 It was a shooting case prior to the shooting in this case that the defendant was involved in. And I just want to confirm for the record that [defense counsel] has received all of that. It was sent back in ... September '07....
 

 THE COURT: Okay.
 

 [Defense counsel]: And, Judge, I did receive that though I’m not sure what the State’s intention is with regards to that case.
 

 [Prosecutor]: I don’t know until the Defense puts on their case, Your Hon- or.... I have no intention unless there is—
 

 
 *521
 
 [Defense counsel]: So there was no
 
 Williams
 
 Rule motion filed or anything like that, so—
 

 [Prosecutor]: No, there was no
 

 Williams
 
 Rule or anything like that— THE COURT: Okay.
 

 [Prosecutor]: Unless—
 

 THE COURT: We’ll deal with it if it comes up—
 

 (Emphasis added.)
 

 In opening statements, the defense argued that: (1) at the time the crime was committed, appellant was attending a little league football game in Boynton Beach with the Smith family; and (2) that State witnesses Ulcena and Ramsey were not credible.
 

 After the State rested its case, the defense presented three alibi witnesses: Brett Smith, Sr., Brett Smith, Jr., and Susan Young (Smith, Jr.’s aunt). All of the alibi witnesses testified that appellant drove to and from the football game with Smith, Jr., in Young’s rented vehicle, and that, after the game, appellant spent the evening at the Smith home playing video games. Smith, Jr. said that he and appellant returned to the Smith house between 10:30 and 11:00 p.m., after Smith, Jr.’s parents. Smith, Sr. said that all of the cars arrived home at about the same time. Young testified that the group traveled to and from the game together, and stayed at the game until it was over.
 

 After the defense rested its case, the State called Detective Foster as a rebuttal witness. Defense counsel requested a sidebar, and the following dialogue ensued:
 

 [Defense counsel]: The State’s calling a rebuttal witness of a witness that I received in supplemental discovery yesterday; is that correct?
 

 [Prosecutor]: ... you received the witness yesterday, but the DVD of the police report was provided six months ago. Seven, 7 months ago.
 

 [Defense counsel]: What is the rebuttal witness- — I have not talked to this witness. I don’t know what the State’s planning to call—
 

 [Prosecutor]: He’s just going to introduce the defendant’s statement?
 

 [Defense counsel]: What defendant statement? What statement? With regard to this case?
 

 [Prosecutor]: With regard to this case?
 

 [Defense counsel]: Okay.
 

 [Prosecutor]: With regards to this case and where he was that night.
 

 [Defense counsel]: Judge, the discovery — I received no statement.
 

 [Prosecutor]: The actual discovery said the Miranda form, the Defendant’s statement, all of the police reports related to that case were supplied to you, and I gave you the DVD.
 

 [Defense counsel]: I believed that was a DVD from the prior case.
 

 [Prosecutor]: It is.
 

 [Defense counsel]: Not on this case? [Prosecutor]: They’re — he talked about this case during the DVD.
 

 [Defense counsel]: Judge, I received a DVD from a prior case. According to the discovery I received there is no statement in this case.
 

 THE COURT: Okay. Show me where you have listed the statement? [Prosecutor]: I actually read it out loud September 27, 2007, all documents, the police report, Miranda forms, defendant interview on DVD, and evidence related to Case Number DR064980.
 

 [Defense counsel]: Judge, I haven’t had an opportunity to review the statement before introduced.... Judge, a DVD I [have] never seen. It appears to me it was a statement that it was connected to
 
 *522
 
 another case. Apparently ... this was an interview given directly attributed to a different case, not in this case.
 

 THE COURT: On September 27th did you give that discovery on this case with this case number?
 

 [Prosecutor]: Yes, with this case number. And I gave the entire DVD, the police report and everything else. And we talked about it.
 

 [Defense counsel]: I got this the day before yesterday.
 

 [Prosecutor]: No, you got this September 27 of 2007.
 

 Upon defense counsel’s request, the relevant portion of the DVD of appellant’s interview with Detective Foster (from the prior, unrelated case) was played outside the jury’s presence. During the interview, appellant contradicted the testimony of his own alibi witnesses in the instant case, stating that he left the game earlier than everyone else; that he rode to the game with Brett Smith, Jr.’s parents and daughter, in “Brett’s mom’s car”; and that he returned to the Smith home a little after midnight, before Smith, Jr.
 

 The State advised that what was played was a redacted portion of the two hour long DVD, the rest of which pertained to other cases. When the defense advised he was not aware of this portion of the statement, the prosecutor asserted: “That’s because it’s two hours into the statement, and it’s only four or five minutes long.” Defense counsel argued: “That’s the problem.” Defense counsel requested a
 
 Richardson
 
 hearing without objection from the State.
 

 At this time, the court stated that it was conducting a
 
 Richardson
 
 hearing. Again, the State advised that its supplemental discovery submission dated September 27, 2007, provided the defense with “[a]ll documents, statements, police reports, Miranda forms, defendant interviews on DVD, and evidence related to DR064980.” The court then clarified: “The 9/27/07 supplemental discovery is on
 
 this
 
 case, and it references the DVD on the '06 case.” (Emphasis added.) Defense counsel then advised:
 

 Judge, there were two cases involved in which [appellant] was arrested on. Now, I believed what the State was offering earlier — because I have asked. I asked the deputy in deposition, during deposition, are there any statements given by [appellant] with regards to this case?
 

 He answered, no. It’s in the deposition. What they were — what the State is offering over was what I thought to be potential ...
 
 Williams
 
 Rule hearings with regards to this case. Not a statement that was directly attributed to this case. And according to the lead detective, who the State didn’t even call, there was no statement with regards to this case.
 

 The trial court found there was no discovery violation, stating:
 

 [B]y way of supplemental discovery that bears a certificate of service of September 27th, '07, the Defense in this case was provided with notice that the State would intend to use a DVD on the other '06 case where the defendant gave a statement. So the Court finds that there is no discovery violation.
 

 Defense counsel unsuccessfully moved for a mistrial.
 

 The State’s rebuttal witness, Detective Foster, testified that he interviewed appellant a week after the shooting. Appellant told the detective he had been at a youth football game that night. Over appellant’s renewed objection, the trial court admitted the excerpt of the DVD pertaining to the case at bar, and it was played for the jury. Thereafter, Foster testified that it was clear from appellant’s statement, that he
 
 *523
 
 did not travel to and from the game with Smith, Jr.
 

 During closing, the prosecutor argued that appellant’s statement “completely contradicts all three alibi witnesses. So, the conclusion about the alibi witnesses is that they’re lying, and they’re lying for a reason.” Defense counsel maintained that the case boiled down to mistaken identity, noting that the victim’s recollections were based on only a split second of observations. The defense also maintained that the photographic lineup was suggestive, where only one of the males depicted had a “twists” hairstyle. As for the alibi defense, appellant was left to argue that, while there were inconsistencies, all witnesses were consistent with regards to appellant’s whereabouts on the night of the incident. In rebuttal, the prosecutor reminded the jury to watch the DVD and listen to the inconsistencies between appellant and his alibi witnesses.
 

 Appellant alleges that the trial court erred in denying the defense motion for a
 
 Richardson
 
 inquiry 'where (1) the State failed to provide the defense with specific written notice of the substance of appellant’s statement made to Detective Foster; and (2) the State failed to identify Foster as a witness to this particular statement until the day of trial. Appellant claims the State’s conduct violated both the letter of rule 3.220(b)(1) and the spirit of the law concerning the rules of discovery.
 

 The State responds that no discovery violation occurred, and thus, a
 
 Richardson
 
 hearing was unnecessary; that the trial court
 
 did
 
 hold a sufficient
 
 Richardson
 
 inquiry; the court did not err in finding the State did not commit a discovery violation; and finally, error if any was harmless.
 

 We find that the State did not commit a discovery violation by failing to provide the defense with the substance of appellant’s statement to Detective Foster. Rule 3.220(b)(1)(C) requires the State to disclose “any written or recorded statements and the substance of any oral statements made by the defendant....” As we recently held in
 
 Durrance v. State,
 
 44 So.3d 217 (Fla. 4th DCA 2010), “[t]he state, having disclosed the existence of the prior ... testimony, was not required to provide the substance of the written or recorded testimony, nor was it required to do the defense’s job by pointing out exactly which parts of the ... testimony that it intended to use.”
 

 However, we find that the State committed a discovery violation when it failed to identify Detective Foster as a witness to this particular statement until the day of trial. Rule 3.220(b)(l)(A)(i) requires the State to disclose “a list of the names and addresses of ... ‘rebuttal to alibi witnesses.’ ” Again, in its supplemental discovery submitted on September 27, 2007, the State provided: “All documents, statements, police reports, Miranda forms, Defendant interview on DVD, and evidence related to case DR-O6-4980. Additional witnesses: All defense witnesses; Brett Smith, Jr., Tymelle Jones, Jermaine Paul, Brett Smith, Sr., and Stephanie Young.” The State, however, did not list Detective Foster as a witness. The State must have known of Detective Foster’s identity at that time because they presumably reviewed the DVD which showed him interviewing appellant in the other case. The State cannot argue that the defense should have discovered Detective Foster’s identity when the State had the affirmative duty to disclose his identity as a “rebuttal to alibi witness.”
 

 Particularly telling was the prosecutor’s statement to the trial court and defense counsel that she did not know what her intention was with respect to the statement “until the Defense puts on their
 
 *524
 
 case.” We find this claim highly suspect. When the State tendered the DVD of appellant’s statement to the defense in September of 2007, it had already deposed Smith, Jr., whose deposition testimony concerning appellant’s alibi contradicted appellant’s statements. Furthermore, the State was well aware at the time of trial that appellant would be presenting an alibi defense through the testimony of the three Smith family witnesses.
 

 Once a trial court has notice of a possible discovery violation, the court must conduct a
 
 Richardson
 
 hearing to inquire about the circumstances surrounding the State’s violation of the discovery rules and examine the possible prejudice to the defendant.
 
 Smith v. State,
 
 7 So.3d 473, 505 (Fla.2009). Here, the trial court stated that it was conducting a
 
 Richardson
 
 hearing. However, the court only inquired whether the State committed a discovery violation by failing to provide the defense with the substance of appellant’s statement to Detective Foster. The court did not inquire whether the State committed a discovery violation when it failed to identify Detective Foster as a “rebuttal to alibi witness.” As a result, the court did not conduct an adequate inquiry into the three requisite factors: “(1) whether the discovery violation was willful or inadvertent; (2) whether it was trivial or substantial; and (3) whether it had a prejudicial effect on the opposing party’s trial preparation.”
 
 McDuffie v. State,
 
 970 So.2d 312, 321 (Fla.2007).
 

 A discovery violation is harmless error only if the appellate court can determine beyond a reasonable doubt that the error did not procedurally prejudice appellant.
 
 Cox v. State,
 
 819 So.2d 705 (Fla.2002). In
 
 Cox,
 
 the supreme court described the State’s burden in asserting that a discovery violation was harmless:
 

 [W]here the State commits a discovery violation, the standard for deeming the violation harmless is extraordinarily high. A defendant is presumed to be procedurally prejudiced “if there is a reasonable probability that the defendant’s trial preparation or strategy would have been materially different had the violation not occurred.”
 
 Pomeranz v. State,
 
 703 So.2d 465, 468 (Fla.1997) (quoting
 
 State v. Schopp,
 
 653 So.2d 1016, 1020 (Fla.1995)). Indeed, “only if the appellate court can say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation can the error be considered harmless.”
 
 Id.
 

 Id.
 
 at 712.
 

 The record does not reflect that the error is harmless. The defense proceeded on two theories: alibi and mistaken identity. Appellant’s statements to Detective Foster in the prior case significantly contradict the testimony of all three of his alibi witnesses in this case. Thus, had the defense known of Foster and that he would be testifying that he had elicited that prior statement, it is highly unlikely that appellant would have advanced an alibi defense. Instead, appellant could have defended the charge on the basis of misidentification.
 

 Because we cannot say beyond a reasonable doubt that appellant did not suffer procedural prejudice from the discovery violation, we reverse and remand for a new trial.
 

 Reversed and Remanded for a New Trial.
 

 GERBER and LEVINE, JJ., concur.
 

 [1]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971).