WARNER, J.
 

 Appellant, George Durrance, challenges his conviction for first degree murder. He maintains that the trial court erred in fail
 
 *219
 
 ing to conduct an appropriate Richardson
 
 [1]
 
 hearing when the state notified the court during trial that it might seek to introduce portions of his testimony in an unrelated trial. We hold that no discovery violation occurred, because the state had filed a supplemental discovery disclosure which specifically included his testimony in the unrelated case. Moreover, even if it were a violation, no procedural prejudice is apparent, as the state never used the testimony from the prior trial.
 

 Durrance was charged in 2007 with first degree murder in the shooting death of Michael Schmedes in February 1999, which occurred during the course of a cocaine deal. The evidence presented at trial
 
 [2]
 
 showed that in 1999, Durrance was a major cocaine dealer in the Jacksonville area. His main supplier was located in Miami. The victim was a drug dealer based in West Palm Beach, whom Dur-rance used as a “backup supplier.”
 

 On the date of the murder, Durrance travelled to West Palm Beach with his right-hand man, Floyd Gibbs. It is undisputed that Durrance met the victim at a hotel room within a short time after the victim checked in. The victim was in possession of a large amount of cocaine, which he had obtained from his supplier.
 

 Around an hour after Durrance checked into the hotel, the hotel manager and clerk heard shots. They came running out of the office to see the victim walk up to the front door of the lobby, slump over and fall to the ground. Realizing that the victim had been shot, they called 911. When the hotel manager asked the victim who shot him, he responded that he didn’t know. In response to further questioning, he also stated something to the effect that, “I can’t believe they did this.” Shortly thereafter, paramedics transported the victim to the hospital where he died. Evidence gathered at the scene included a blue towel with Floyd Gibbs’s DNA on it, as well as that of Durrance’s wife. Durrance’s fingerprints were found on a keycard for the room.
 

 At trial, the state’s theory was that Durrance had planned to rob the victim of the cocaine and that either Durrance or Floyd Gibbs, working on behalf of Dur-rance, killed him during the course of the robbery. The state presented multiple witnesses to support this theory. Gary Bradstreet, who was regularly hired by Durrance to transport him back to Jacksonville when he purchased drugs in South Florida, testified that Durrance told him that he had shot the “big hillbilly dude” in the hotel, but later confided to Bradstreet that Gibbs had shot him and he was simply taking responsibility to calm Gibbs down. Several of the other witnesses, who were already in prison for sale of cocaine or other serious charges, testified that Durrance admitted to murdering the victim in West Palm Beach. Both Bradstreet and the other prisoner witnesses were all providing testimony with the desire to get favorable treatment either for themselves or another family member.
 

 In his defense, Durrance provided a different account of the shooting. Durrance testified that he was present at the hotel for the drug transaction, but Floyd Gibbs was not present. While he was conducting the transaction with Schmedes, two masked gunmen entered the room demanding the drugs and the money. A struggle ensued between the victim and
 
 *220
 
 the masked men. Durrance claimed that he didn’t remember seeing the victim get shot, but he heard a gunshot and then ran outside the room. Durrance then hid between some cars. While hiding, Durrance saw that the victim had been shot and was walking towards the lobby of the hotel. A few seconds later, he saw the two masked robbers leave the hotel room and jump into a big black truck. Durrance testified that he recognized the truck from a prior meeting with a drug dealer named “Steve,” whom he had used before as one of his cocaine suppliers. Durrance suspected that Steve was behind the robbery. Dur-rance then got into his vehicle and picked up Floyd Gibbs, telling Floyd only that “things didn’t go right.” He made arrangements for Bradstreet, his regular driver, to pick him up. He did not tell Bradstreet about the robbery, just that things “went wrong.”
 

 The jury found Durrance guilty of first degree murder, a lesser included offense of first degree murder with a firearm. The trial court imposed the mandatory sentence of life without parole.
 

 Durrance raises a single issue on appeal, claiming that the state committed a discovery violation by failing to provide prior to trial a transcript of his testimony as a witness in another unrelated case which the prosecutor determined that she might use at trial for impeachment purposes. Because the state properly disclosed the trial testimony, we conclude that no discovery violation occurred. In any event, the testimony from the prior trial was never used, and no procedural prejudice has been shown.
 

 Five months prior to the trial of this case, the state filed a supplemental discovery response, listing Durrance’s trial testimony as a witness in a 2007 murder case. It did not provide him with a copy of the transcript of his testimony during that trial, although it did provide him with a transcript of his deposition in the 2007 case, which the prosecutor maintained was identical to his trial testimony. On the fifth day of Durrance’s trial, the prosecutor handed to defense counsel the trial transcript of Durrance’s 2007 testimony. Counsel objected to this late production and argued that the state had committed a discovery violation by failing to produce the transcript. The prosecutor maintained that no discovery violation occurred, because she had disclosed the trial testimony to the defense. The prosecutor wanted to use only two sentences from Durrance’s prior testimony for impeachment purposes. In his prior testimony, Durrance admitted that he would do anything to get out of prison, and that he would even lie under oath. The state wanted to be able to use that prior testimony for impeachment purposes if Durrance were to testify that he would never lie under oath. The prosecutor also explained that she did not know Durrance would be testifying until trial began, and she did not believe the state would pay for a transcript unless she would actually use it. The court concluded that no discovery violation occurred.
 

 When a defendant elects to participate in the discovery process, Florida Rule of Criminal Procedure 3.220(b)(1) requires the state to “disclose to the defendant and permit the defendant to inspect, copy, test, and photograph the following information and material within the state’s possession or control: ... (C) any written or recorded statements and the substance of any oral statements made by the defendant. ...” As was its obligation pursuant to the rule, the state notified the defendant of the existence of defendant’s trial testimony in a prior case. In
 
 B.T.G. v. State,
 
 694 So.2d 767 (Fla. 1st DCA 1997), the court held that a witness’s statement made in proceedings in open court was not with
 
 *221
 
 in the possession or control of the state. Thus, the court reasoned that the state had no obligation to disclose it. We would not go that far. We conclude that the state had the duty to disclose the trial testimony of the defendant. The trial testimony is a written or recorded statement of the defendant. It is recorded by a court reporter or by audio recording, and when requested, it is transcribed into a written text. Here, the state fulfilled its obligation under the rule by disclosing the trial testimony in its supplemental response to defendant’s request for discovery. The defendant has the burden of inspecting and copying the trial testimony.
 
 See State v. Williams,
 
 678 So.2d 1356, 1357-58 (Fla.3rd DCA 1996) (holding that rule 3.220(b)(1) requires the prosecutor to produce documents for inspection and copying, but it is defendant’s burden to bear the expense of copying documents). Dur-rance could have, but did not, request to copy or inspect the transcript. The trial court found that there was no discovery violation, and we agree. The state, having disclosed the existence of the prior trial testimony, was not required to provide the substance of the written or recorded testimony, nor was it required to do the defense’s job by pointing out exactly which parts of the trial testimony that it intended to use.
 

 Moreover, even if the state committed a discovery violation by failing to produce the transcript prior to the start of trial, we would find the trial court’s failure to conduct a complete
 
 Richardson
 
 hearing to be harmless beyond a reasonable doubt, because the state never used any of the prior taial testimony. Where a discovery violation has occurred, the failure to conduct a
 
 Richardson
 
 hearing is not per se reversible error, but rather is subject to a harmless error analysis.
 
 See State v. Schopp,
 
 653 So.2d 1016, 1020-21 (Fla. 1995). The relevant inquiry is “whether there is a reasonable possibility that the discovery violation ‘materially hindered the defendant’s trial preparation or strategy.’ ”
 
 Scipio v. State,
 
 928 So.2d 1138, 1150 (Fla. 2006) (quoting
 
 Schopp,
 
 653 So.2d at 1020). An analysis of procedural prejudice “considers how the defense might have responded had it known about the undisclosed piece of evidence and contemplates the possibility that the defense could have acted to counter the harmful effects of the discovery violation.”
 
 Scipio,
 
 928 So.2d at 1149.
 

 Durrance does not explain how he was procedurally prejudiced by the late review of Durrance’s testimony in the prior trial. His testimony in that case was not relevant to any substantive fact in his own trial, but rather would have been used only for impeachment purposes if Durrance were to testify that he would never lie under oath. Thus, the undisclosed statement would not have caused him to pursue a different theory of defense. His theory of defense was that two unknown masked men, presumably working for the drug dealer named “Steve,” entered the hotel room during the drug deal, stole the cocaine, and murdered the victim.
 

 During the state’s cross-examination of Durrance, the state never impeached him with his testimony in the prior case. Dur-rance candidly admitted, both in his own trial and in the unrelated trial, that he might lie under oath to get out of prison. Thus, the state never had any reason to impeach Durrance with his prior testimony. He does not claim on appeal that he would have declined to testify or that his testimony would have been any different had the alleged discovery violation never occurred. The lack of procedural prejudice to the defense from the failure to provide a copy of the trial transcript at an
 
 *222
 
 earlier time is an additional reason for affirming Durrance’s conviction.
 

 Affirmed.
 

 GROSS, C.J., and FISHMAN, JANE D., Associate Judge, concur.
 

 [1]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971).
 

 [2]
 

 . This opinion significantly shortens the presentation of the testimony at trial, because a thorough explication of the evidence is not necessary to the issue raised on appeal.