DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAMIE DEANDRE BROWN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-2937

[May 20, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 50-2012-CF-012801-AXXX-MB.

Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.

STEVENSON, J.

Defendant challenges his convictions for sale of cocaine and two counts of sale of a schedule I drug, arguing that a discovery violation by the State and the trial court's resulting failure to conduct an adequate *Richardson* hearing compel reversal. We agree.

Defendant's convictions arose from the sale of drugs to the same undercover officer on November 14, 2012, and again on November 20, 2012, at the same location, a Burger King. According to the undercover officer, the first sale took place in the parking lot and the second in the bathroom. At trial, the undercover officer identified defendant as the man who sold him the drugs, testifying that, at the time, defendant had a very distinctive hair style—two long dreads pulled off to the side of his head. The undercover officer had recorded the two drug buys and the videos were introduced into evidence. Neither video, however, clearly depicts the seller and the date stamps on the videos did not match the dates of the drug buys. According to the officer, this discrepancy was due to the fact that, at the time, he did not know how to change the camera's setting.

At the outset of the trial, the State advised the court that, following defendant's December 2012 arrest, defendant gave a video-recorded statement to the same undercover officer to whom defendant was alleged to have sold the drugs. During the interview, defendant admitted he had twice met the officer at Burger King, nodding when the officer indicated the first time had been in the parking lot and the second in the bathroom. The State wanted to introduce the recorded interview.

Defense counsel objected. He acknowledged the State had provided him a copy of this video statement as part of the discovery submissions in other pending cases and that he reviewed the video, but asserted he had no idea the State had intended to introduce the video at *this* trial. Defense counsel asserted that his defense was that defendant had been misidentified, noting the recordings of the two drug buys did not clearly show the seller's face. Without conducting an inquiry into the reasons for the State's failure to provide defendant's video statement as part of the discovery in this case, the trial court ruled the tape was admissible.

Thereafter, the undercover officer testified he had interviewed defendant following his arrest, and defendant acknowledged having previously met the officer in Burger King's parking lot and bathroom. When the State sought to play the video for the jury, defense counsel again objected, arguing the State had committed a discovery violation and insisting the defense was prejudiced as the video undermined the misidentification defense. The trial court ruled there was no discovery violation as the video had been provided to defense counsel in connection with other cases. It is this ruling that forms the basis for defendant's appeal.

"'A *Richardson* hearing is required when there is a *possible* discovery violation in order to flesh out whether there has indeed been a discovery violation.'" *Thomas v. State*, 63 So. 3d 55, 59 (Fla. 4th DCA 2011) (quoting *Landry v. State*, 931 So. 2d 1063, 1065 (Fla. 4th DCA 2006)). To conduct a *Richardson* hearing, "'the trial court must inquire as to whether the violation (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation.'" *Id.* (quoting *State v. Evans*, 770 So. 2d 1174, 1183 (Fla. 2000)). A trial court's rulings regarding the three-prongs of *Richardson* are reviewed for an abuse of discretion, but this discretion can be exercised only following a proper inquiry. *See Kipp v. State*, 128 So. 3d 879, 881 (Fla. 4th DCA 2013); *see also Barrett v. State*, 649 So. 2d 219, 222 (Fla. 1994).

The trial court's failure to conduct a required *Richardson* hearing is not

reversible error per se. *See, e.g., M.H. v. State*, 151 So. 3d 32, 37 (Fla. 3d DCA 2014). But, where there has been an inadequate *Richardson* hearing, the discovery violation can be found harmless "'[o]nly if the appellate court can say, beyond a reasonable doubt, that the defense was not procedurally prejudiced by the discovery violation . . . .'" *Id.* (quoting *Acosta v. State*, 856 So. 2d 1143, 1145 (Fla. 4th DCA 2003)). "[I]t is the State's burden to show that the error was harmless, the State must show in the record that the defendant was not prejudiced by the discovery violation." *Casica v. State*, 24 So. 3d 1236, 1241 (Fla. 4th DCA 2009). "The state's burden to show a discovery violation to be harmless is 'extraordinarily high.'" *Kipp*, 128 So. 3d at 883 (quoting *Hicks v. State*, 45 So. 3d 518, 524 (Fla. 4th DCA 2010) (quoting *Cox v. State*, 819 So. 2d 705, 712 (Fla. 2002))).

In the instant case, the State committed a discovery violation when it failed to list defendant's video statement to police in its discovery submissions *in this case*. Florida Rule of Criminal Procedure 3.220 requires the State to provide names of witnesses present when recorded or unrecorded statement are taken from or made by defendant and to provide any written or recorded statements made by defendant, together with the names of witnesses to the statements. *See* Fla. R. Crim. P. 3.220(b)(1)(A)(i), (C). "[A] defendant is entitled to rely on the accuracy of the information disclosed by the prosecution pursuant to a discovery request under rule 3.200." *McArthur v. State*, 671 So. 2d 867, 870 (Fla. 4th DCA 1996). The "[f]ailure to give all of the required information is a discovery violation." *Kucher v. State*, 758 So. 2d 1165, 1166 (Fla. 2d DCA 2000). Moreover, "[t]he fact that the existence of the statement was previously revealed to the defendant does not mean that the state complied with the discovery rules." *D.R. v. State*, 588 So. 2d 327, 328 (Fla. 4th DCA 1991) (finding error in trial court's refusal to hold a *Richardson* hearing and rejecting State's argument that there was no discovery violation because statement had been disclosed a month earlier during a hearing).

In the face of the commission of a discovery violation, the trial court was required to conduct a *Richardson* hearing and *required* to inquire (1) whether the violation was willful or inadvertent; (2) whether the violation was trivial or substantial; and (3) whether the violation had a prejudicial effect on the defendant's trial preparation. *State v. Evans*, 770 So. 2d 1174, 1183 (Fla. 2000). Here, having found there was no discovery violation, the trial court failed to make any inquiry regarding the first two factors, rendering the hearing inadequate. Further, rather than put the burden on the State to demonstrate the lack of procedural prejudice to the defense, the trial court inquired only of the defense. *See Cliff Berry, Inc. v. State*, 116 So. 3d 394, 418 (Fla. 3d DCA 2012) (recognizing *Richardson* inquiry is inadequate where trial court did not require State to

3

demonstrate lack of procedural prejudice, but, instead, shifted burden to defendant), *review denied sub nom. State v. Smith*, 133 So. 3d 528 (Fla. 2014); *Thomas*, 63 So. 3d at 59 (noting that trial court's "imposing the burden on the defendant to demonstrate prejudice instead of determining the circumstances of the discovery violation and requiring the State to demonstrate lack of prejudice to the defendant, does not satisfy the procedure contemplated by *Richardson*"). Having reviewed the record, we conclude the State cannot meet its burden of establishing that the absence of an adequate *Richardson* hearing was harmless and that, beyond a reasonable doubt, defendant suffered no procedural prejudice.

A defendant is procedurally prejudiced

> "if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefited the defendant."

*Thomas*, 63 So. 2d at 59 (quoting *State v. Schopp*, 653 So. 2d 1016, 1020 (Fla. 1995)). Stated another way, "[a]n analysis of procedural prejudice 'considers how the defense might have responded had it known about the undisclosed piece of evidence and contemplates the possibility that the defense could have acted to counter the harmful effects of the discovery violation.'" *Durrance v. State*, 44 So. 3d 217, 221 (Fla. 4th DCA 2010) (quoting *Scipio v. State*, 928 So. 2d 1138, 1149 (Fla. 2006)).

The video of defendant's statement to police did more than just give the jury the opportunity to look at defendant's face and distinctive hair as he appeared nearer in time to the charged offenses. In the video, the defendant admitted to having met the undercover officer twice at Burger King, once in the parking lot and once in the bathroom. These statements wholly undermined any possibility of a defense resting on the premise that the undercover officer misidentified the defendant as the perpetrator and confirmed the officer's testimony regarding the details of the transactions. Had defense counsel known of the State's intent to introduce the statement to the undercover officer, he would certainly have abandoned a mistaken identity defense, which was assured of failing, and prepared differently for trial. In closing argument, defense counsel reminded the jury that the dates on the recordings of the drug buys did not match the dates of the drug sales testified to by the undercover officer. He also pointed out that the defendant's "statement" admitting to meeting the undercover officer in the parking lot and bathroom was nothing more than a head nod, suggesting the nod was the result of defendant's fear. These

4

theories could have been more fully developed had defense counsel been made aware prior to trial of the State's intention to introduce defendant's statement to the undercover officer. The State thus cannot meet its burden of demonstrating that the failure to conduct an adequate *Richardson* hearing was harmless. *See Thomas*, 63 So. 3d at 59 ("[T]he harmless error standard for a State discovery violation does not focus on the discovery violation's effect on the verdict; instead, the inquiry is whether there is a reasonable possibility that the discovery violation materially hindered the defendant's trial preparation or strategy." (citing *Scipio*, 928 So. 2d at 1149–50)).

Accordingly, defendant's convictions are reversed, and the matter is remanded for a new trial.

*Reversed and Remanded.*

CIKLIN and KLINGENSMITH, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***