DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

D.W.,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2022-3494

_____

June 21, 2024

Appeal from the Circuit Court for Hillsborough County; Lawrence M.
Lefler, Judge.

Howard L. Dimmig, II, Public Defender, and Anthony C. Musto, Special
Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Lydon Schultz,
Assistant Attorney General, Tampa, for Appellee.


KHOUZAM, Judge.

D.W. appeals a disposition order adjudicating him delinquent for
armed possession of cocaine, possession of a firearm while committing a
felony, and possession of a firearm as a minor. He frames four issues
regarding speedy trial, questioning at the adjudicatory hearing, the
admission of a photograph into evidence, and a discovery violation.

Although we see no reversible error with respect to the speedy trial, trial questioning, and photograph admission issues, we agree with D.W. that the State committed a discovery violation and that the trial court's *Richardson*[1] hearing was inadequate.  As we now explain, we reverse on that basis only and remand for a new adjudicatory hearing.

## I.    Speedy Trial

First, D.W. contends that the trial court erred by failing to discharge him for failure to hold a hearing within five days of his filing a motion for discharge alleging a speedy trial violation.  Specifically, although D.W. admits that the Hillsborough County courts were closed for a holiday and a hurricane surrounding the deadline for the hearing, he asserts that the fact the Florida Supreme Court did not issue an administrative order reflecting the hurricane closure until after the hearing deadline passed constituted a violation of his vested right to discharge.  Although we have not located any authorities directly on point, we hold that the supreme court's administrative order expressly extending speedy trial deadlines in cases like D.W.'s was effective here, such that the trial court did not err in following it.

Where a juvenile files a motion for discharge, two deadlines result. *See, e.g., State v. S.A.*, 133 So. 3d 506, 509 (Fla. 2014).  In particular, Florida Rule of Juvenile Procedure 8.090(m)(3) provides:

> No later than 5 days from the date of the filing of a motion for discharge, the court shall hold a hearing on the motion and . . . shall order that the child be brought to trial within 10 days.  If the child is not brought to trial within the 10-day period through no fault of the child, the child shall be forever discharged from the delinquent act or violation of law.

---

[1] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

Here, D.W.'s motion for discharge was filed on Monday, September 19, 2022. Applying the time computation set forth in Florida Rule of General Practice and Judicial Administration 2.514(a), the deadline to hold a hearing thereon would ordinarily have been one calendar week later: Monday, September 26 (September 19 plus five days was Saturday, September 24, thereby extending the deadline through the weekend).

But September 26, 2022, was Rosh Hashanah, a holiday that had previously been designated by the Chief Judge of the Thirteenth Judicial Circuit. *See* Admin. Order No. S-2017-002 (Fla. 13th Cir. Ct. Jan. 12, 2017). And from Tuesday, September 27 through Friday, September 30, 2022, the courts in the Thirteenth Judicial Circuit were unexpectedly closed due to Hurricane Ian. *See* Fla. Admin. Order No. AOSC22-64 (Fla. Oct. 6, 2022). Thus, due to a combination of a holiday and a hurricane, the court was closed the entire five-day business week from Monday, September 26, 2022, through Friday, September 30, 2022.

Accordingly, the hearing on D.W.'s motion for discharge was not held until the following Monday, October 3, 2022. Although that was fourteen calendar days after the motion was filed, it was the first day the court was open since before the hearing deadline. The adjudicatory hearing was timely held ten days thereafter.

D.W. acknowledges that the court was in fact closed that whole week due to the holiday and the hurricane and, further, that the supreme court's administrative order reflecting the closure expressly said that it extended speedy trial deadlines in cases like his. Nonetheless, he asserts that the fact that the supreme court's order was not issued until the week after the hurricane violated his speedy trial right and contends that the trial court was required to discharge him as of September 28.

But D.W.'s contention is contradicted by the plain language of the supreme court's order. In particular, AOSC22-64 expressly states:

> All time limits involving the speedy trial procedure, in criminal and juvenile court proceedings, are suspended from the close of business on Friday, September 23, 2022, until the close of business on Monday, October 3, 2022. . . . The extension of time periods under this order shall apply only when the last day of those periods falls within the time extended.

That language undisputedly applies to D.W.'s case.

Having issued that order on October 6, the supreme court unequivocally gave it retroactive effect to cover the period during which it is undisputed the courts were actually closed for an emergency. D.W. has not advanced, nor have we identified, any authorities suggesting that was improper in this context. We emphasize that this is not a case where, for example, the court held an untimely hearing and attempted to give it retroactive effect; here, the hearing on D.W.'s discharge motion took place on the first day the courts were open following the expiration of the five-day period set forth in rule 8.090(m)(3). Given the plain language of the supreme court's order expressly extending the speedy trial deadlines due to the court closure caused by the hurricane, we cannot say the trial court erred in applying the order to D.W.'s case.

## II. Trial Questioning

Second, D.W. argues the trial court committed fundamental error by assuming the role of the prosecutor. While acknowledging that no objection was made below, he contends that the court's involvement in questioning to refresh a testifying officer's recollection during direct examination by the State crossed the line from impartiality to showing bias for the prosecution. However, the challenged questions were requested by defense counsel, and the court's questioning was within its

4

statutory discretion to control the proceedings and avoid needless consumption of time. Under these circumstances, we see no error.

Florida law is settled that "trial courts have 'wide latitude' to regulate proceedings before them 'in order that the administration of justice be speedily and fairly achieved in an orderly, dignified manner.' " *Stevenson v. State*, 234 So. 3d 828, 830 (Fla. 1st DCA 2017) (quoting *Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990)). "This means that 'in the absence of a controlling statute or overriding [r]ule of procedure[,] the method of conducting a trial is within the reasonable discretion of the trial court.' " *Id.* (alterations in original) (quoting *Kennick v. State*, 107 So. 2d 59, 60 (Fla. 1st DCA 1958)).

To that end, section 90.612(1), Florida Statutes (2022), expressly obligates trial judges to "exercise reasonable control over the mode and order of the interrogation of witnesses and the presentation of evidence." Two enumerated purposes of this duty are to "[f]acilitate, through effective interrogation and presentation, the discovery of the truth" and to "[a]void needless consumption of time." § 90.612(1)(a), (b).

Here, a testifying officer was having trouble on the stand recalling the location of a gun holster discovered during D.W.'s arrest. When the State attempted to refresh the officer's recollection with a copy of the criminal report affidavit (CRA), D.W.'s counsel objected on the dual bases that (1) the State failed to follow the correct procedure for refreshing the officer's recollection and (2) the CRA was hearsay because it was authored by someone else.

Thereafter, the parties and the court discussed the issue of whether and how the officer could refresh his recollection with the CRA. D.W.'s counsel argued that the State must ask the officer several questions in

order to establish the foundation for refreshing his recollection with the CRA. Specifically, defense counsel stated that

> he has to establish the foundation of how he used this document to refresh his recollection . . . . They just show it to him. That is tainting his testimony. He has to establish, yes, this is the officer's so-and-so's CRA. We were all at the same location. His CRA will refresh my recollection. He has not established that.

The court responded, talking to the State: "Go ahead. Ask him whose CRA it is . . . ." The State protested having to ask the questions proposed by D.W.'s counsel, replying "I would simply ask what . . . case law, what statute, what rule . . . ."

The court then cut off the State, stating "Just ask him. <u>It will be quicker to ask him than to find the rule</u>. Just ask him whose CRA it is and would that help him." (Emphasis added.) Thereafter, the court directed the State to ask the questions D.W.'s counsel had proposed.

In this context, we cannot say the trial court abused its discretion, much less committed fundamental error. The questioning D.W. now complains about was proposed by his own counsel; the court directed the State to engage in it over the State's objection. Indeed, even had D.W. not proposed the questions, the court's involvement was a proper exercise of its discretion to satisfy its statutory obligation under section 90.612(1)(b) to "[a]void needless consumption of time" spent arguing over how to refresh a witness's recollection.

### III.  Admission of Photograph

Third, D.W. contends the trial court committed reversible error by admitting a photograph into evidence without sufficient foundation. Specifically, he contends that the photograph was different than how the authenticating officer described it and that, on this basis, the court should have recognized that the rest of the officer's testimony was not

6

credible. Even though there was clear confusion about the photograph at trial, it is of such low relevance to the charges that we cannot imagine any harm from its admission, therefore rendering any error harmless.

"Authentication or identification of evidence is required as a condition precedent to its admissibility." § 90.901. Although "authentication for the purpose of admission is a relatively low threshold," it nonetheless "requires a prima facie showing that the proffered evidence is authentic." *Mullens v. State*, 197 So. 3d 16, 25 (Fla. 2016) (citing *Gosciminski v. State*, 132 So. 3d 678, 700 (Fla. 2013)).

Here, there was clearly confusion about the photograph at the hearing. D.W. is correct that the authenticating officer's description of the photograph is inconsistent with its contents. Further, different officers described the photograph in irreconcilable ways, such as disagreeing about which officers it depicted.

Thus, the testimony authenticating the photograph appears to have failed even the "relatively low threshold" for doing so, such that admitting it into evidence was an abuse of discretion. *See Walker v. Harley-Anderson*, 301 So. 3d 299, 304 (Fla. 4th DCA 2020) (concluding trial court abused its discretion in admitting text messages where proponent failed to show that "the text messages were what [proponent] claimed").

Even so, we conclude that any error in admitting this photograph was harmless as a matter of law. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). The photograph in the record, which the parties agree was the same one at issue below, simply shows the front of a residence, with one officer's hand at the bottom and another officer some feet away to the left. The relevance of the photograph was to show, for context, the layout of the geographical area where the arrest took place. The photograph does not show anything relating to any of the elements of the

7

drug or firearm crimes charged. Nor does it appear to depict D.W. at all, much less show him resisting any officers. On this record, we cannot say that even the erroneous admission of this photograph had any prejudicial effect on the outcome.

## IV.  Discovery Violation

Finally, D.W. argues the trial court erred by declining to find a discovery violation and to hold an appropriate *Richardson* hearing to address it. Specifically, D.W. contends that the court should have found a discovery violation where the State admitted into evidence photographs for which it gave no pretrial notice of intent to rely. Although the State gave pretrial notice that it intended to rely on a report that identified the existence of the photographs, it failed to also disclose that it intended to rely on the photographs themselves. We agree with D.W. that this was a discovery violation and that the court's inquiry and findings were insufficient.

If the defendant serves a notice of discovery, Florida Rule of Juvenile Procedure 8.060(a)(2)(K) requires the State to disclose "[a]ny tangible papers or objects that the petitioner intends to use in the hearing and that were not obtained from or belonged to the child."

In turn, upon hearing of a possible discovery violation by the State, the judge in a juvenile proceeding must conduct an appropriate *Richardson* inquiry. *Z.L. v. State*, 228 So. 3d 600, 602 (Fla. 2d DCA 2017) (citing *State v. Evans*, 770 So. 2d 1174, 1179 (Fla. 2000)). Thus,

> when a party alleges a discovery violation, the trial court must inquire into the surrounding circumstances and determine (1) whether a discovery violation occurred, (2) "whether the State's discovery violation was inadvertent or willful," (3) "whether the violation was trivial or substantial," and (4) "most importantly, what affect [sic] it had on the defendant's ability to prepare for trial."

8

*Id.* (alteration in original) (quoting *Knight v. State*, 76 So. 3d 879, 888 (Fla. 2011)).

A trial court's rulings on the *Richardson* questions "are reviewed for an abuse of discretion, but this discretion can be exercised only following a proper inquiry." *Goldsmith v. State*, 182 So. 3d 824, 827 (Fla. 4th DCA 2016) (quoting *Brown v. State*, 165 So. 3d 726, 729 (Fla. 4th DCA 2015)). In the same vein, "[i]f the trial court incorrectly concludes that there was no discovery violation and fails to address each of the three prongs of *Richardson*, the *Richardson* hearing is inadequate." *Id.* (citing *Thomas v. State*, 63 So. 3d 55, 60 (Fla. 4th DCA 2011)).

Here, although the trial court did address the alleged discovery violation when defense counsel raised it, in context the court's *Richardson* inquiry was insufficient, and its findings are not supported by the record. The record shows the following.

In its initial notice of discovery, the State said only the following with respect to its rule 8.060(a)(2)(K) obligation:

> YES. Body Worn Camera Video: Link to view and download has been provided by separate e-mail. Any and all evidence seized/impounded. Photograph(s) is furnished via Evidence.com.

Thereafter in supplemental notices dated July, August, and October 2022, the State identified "TPD agency report number 2022-00244500." Although that report describes the existence of several photographs, the photographs themselves are neither included in the report nor otherwise identified in the notices of discovery addressing the report.

Another supplemental notice of discovery dated August 3, 2022, purported to attach a fingerprint analysis, and a supplemental notice dated September 19, 2022, purported to attach a drug analysis as well

9

as a fingerprint analysis.  But none of these attachments are in the record, nor do the notices mention any photographs.

Thus, nothing in the record shows that photographs of fingerprints were identified pretrial as items the State intended to use at trial. Nonetheless, at the adjudicatory hearing the State sought to introduce multiple photographs of fingerprints in order to establish D.W.'s identity.

Defense counsel objected on the basis that, although the State had noticed the report, it never disclosed that it intended to rely upon the photographs mentioned—but not included—therein.  During the resulting inquiry, the court asked the State whether it had listed the photographs themselves in discovery, as opposed to simply the report that relied on them.  The State responded, "Well, we did not know that they existed as—"  The court pressed, "So the answer's no to that question?"  The State's answer was nonresponsive: "Well, they were—we didn't have the photos of the latent prints until—the latent prints in the photos and the latent prints are the same thing, Your Honor."

Even though the State declined in the face of direct questioning to say that it had noticed the photographs it sought to admit, the court expressly found that no discovery violation had occurred.  It ruled "the Defense was aware of these photographs, okay, chose not to depose the officer."  Then, on a basis unclear from the record, the court went further, ruling: "[I]t was provided to the Defense.  I really can't do a *Richardson* hearing when it was actually provided to the Defense."

Defense counsel clarified: "I never received those photos.  Okay, a report saying that the photo exists is different than providing the photos."  Even so, the court reiterated: "I'm going to find that the State did provide those to the Defense and made them available to the Defense. Defense chose not to look at those."

10

Later, the court revisited the issue sua sponte. Again, it found that no discovery violation occurred, but also found that any violation was "not inadvertent because . . . it was listed." The court further found it "trivial because you have—you were on notice of the photographs." Without asking any questions, it also found "there's no prejudicial effect in the Defense's ability to properly prepare for trial because that was listed in the report and in the discovery, the official discovery and the report and the Defense is on notice." The court acknowledged that "if you don't conduct a *Richardson* inquiry, it's an automatic reversal." But it maintained "the *Richardson* inquiry isn't necessary" here.

Contrary to the trial court's findings, nothing in the record shows that the State gave pretrial notice that it intended to rely on photographs of fingerprints at trial. Rather, the record is consistent with defense counsel's assertions that the State noticed only a <u>report</u> that <u>did not contain or attach the photographs</u> the State later admitted at trial. The failure to give pretrial notice of its intent to rely on these photographs at trial was a violation of the plain language of rule 8.060(a)(2)(K).

In addition to erroneously failing to find a discovery violation, the court's *Richardson* inquiry was inadequate. The court declined to ask about the "most important[]" issue of "what [effect] it had on the defendant's ability to prepare for trial." *Z.L.*, 228 So. 3d at 602 (quoting *Knight*, 76 So. 3d at 888). And the findings the court did make about the prongs were conclusory, simply reiterating the court's belief that there was no discovery violation. "The court's failure to inquire into each of the *Richardson* prongs was error." *See id.*

Unlike the admission of the photograph of the residence, we cannot say this error was harmless as a matter of law. These photographs were used to establish the presence of D.W.'s fingerprints on the gun officers

11

found and, thereby, his identity and possession of it. At a minimum, " 'there is a reasonable possibility that [D.W.'s] trial preparation or strategy would have been materially different' had he known that the State" intended to introduce at trial photographs of his fingerprints on the subject weapon. *See Z.L.*, 228 So. 3d at 602 (quoting *Scipio v. State*, 928 So. 2d 1138, 1147 (Fla. 2006)). "The court's inadequate *Richardson* hearing therefore necessitates a new adjudicatory hearing." *Id.* (citing *Ibarra v. State*, 56 So. 3d 70, 72 (Fla. 2d DCA 2011)).

### Conclusion

D.W. has not established any reversible error as to the speedy trial, trial questioning, or authentication issues raised in this appeal. However, because we agree with D.W. that the trial court erred in conducting an insufficient *Richardson* hearing and in failing to find a discovery violation, we reverse and remand for a new adjudicatory hearing consistent with this opinion.

Affirmed in part, reversed in part, and remanded.


VILLANTI and LABRIT, JJ., Concur.


_____


Opinion subject to revision prior to official publication.