DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROYCE GOLDSMITH,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D12-4282, 4D12-4283 and 4D12-4284

[ January 6, 2016 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Barbara McCarthy, Judge; L.T. Case Nos. 08-3705CF10A, 09-3705CF10A and 11-17276CF10A.

Carey Haughwout, Public Defender, and Peggy Natale, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Royce Goldsmith appeals his convictions and sentences for robbery, assault, and possession of a firearm by a convicted felon (Case Number 4D12-4282). He also appeals the revocation of his probation based on the new law violations (Case Numbers 4D12-4283 and 4D12-4284). We affirm appellant's convictions for robbery and assault, and we affirm the revocation of probation, but we reverse his conviction for possession of a firearm by a convicted felon and the habitual felony offender sentences imposed on the robbery and assault charges. We remand for a new trial on the possession of a firearm charge and for a new sentencing hearing.

*Background*

While appellant was still on probation in other cases, he was charged with the new offenses of robbery with a firearm (Count I), aggravated assault (Count II), and possession of a firearm by a convicted felon (Count III). The felon in possession charge (Count III) was severed from the other counts and tried separately.

Appellant was tried by jury on Counts I and II, with the trial court simultaneously hearing evidence on the violation of probation cases. The State presented evidence that appellant used a gun to rob a male victim of two $10 bills, held the gun to the head of a female victim, and left the scene with the male victim's ex-girlfriend. When the police took appellant into custody later that day, a deputy found two $10 bills in one of appellant's pockets. In a 911 call, the male victim, who did not testify at trial, identified the perpetrator as "Biggy." The female victim was the State's principal witness at trial.

Appellant gave a statement to a detective in which he denied that he went by the name "Biggy." Appellant knew the male victim from high school. Appellant claimed that he had gotten into a fight with the male victim because the victim had previously beaten up his (i.e., the victim's) ex-girlfriend, who was acquainted with appellant. Appellant denied pulling a gun on the victims or owning a gun.

Following the trial on Counts I and II, the jury found appellant guilty of the lesser included offenses of robbery and assault, but found that appellant did not actually possess a firearm during the course of the crimes on either count.

The subsequent trial on the firearm possession charge took place before a different jury. The State presented evidence that the police conducted a traffic stop of the vehicle that left the scene of the robbery, that appellant was a passenger in the vehicle, and that the police recovered a handgun in the vehicle behind the seats on the floorboard. Appellant admitted to a detective that he had seen the gun in the backseat, picked it up, and then put it back. Appellant testified in his own defense, claiming that he touched something in the back seat but did not think he was feeling a real gun. The jury found appellant guilty as charged on Count III.

### Confrontation Clause Argument

On appeal, appellant first argues that the admission of the male victim's statements on the 911 call violated his rights under the Confrontation Clause. This issue was preserved in the trial on Counts I and II, but not in the trial on Count III.

We conclude that the statements on the 911 call dealt with an ongoing emergency and were nontestimonial. *See Davis v. Washington,* 547 U.S. 813, 822, 827 (2006); *see also Michigan v. Bryant,* 562 U.S. 344, 370-78 (2011). Thus, the admission of the recording of the 911 call did not violate

2

the Confrontation Clause.  Moreover, even if the admission of the non-testifying witness's statements on the 911 call constituted a violation of the Confrontation Clause, any error was harmless.  *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).  The statements were merely cumulative to the female victim's trial testimony.  And, although appellant disputed the circumstances of the confrontation with the victims, appellant's own statement to the police placed him at the scene of the crimes, so identity was not an issue.  There is no reasonable possibility that any error in admitting the statements contributed to the verdict on Counts I and II.

### *Discovery Violation*

Appellant's next argument concerns a discovery violation that took place during the trial on Count III.  On cross-examination, appellant denied that he went by the nickname "Biggy."[1]  Then, over appellant's objection that the State committed a discovery violation, the prosecutor showed appellant a printout copy of his Facebook page—which was not previously disclosed to the defense—and stated: "So it says [A]bout Royce. And all it says is one word in all capitals, [B]IGGY.  That's what it says on your Facebook account."  Appellant claimed that the name was not on his Facebook page before and that two other people had access to his Facebook account.

The trial court ultimately agreed to hold a *Richardson* hearing.  The prosecutor argued that there was no discovery violation, because appellant's Facebook account was a "public record."  The prosecutor went on to argue the following: "I didn't have access to it until two minutes before he testified, when I Googled his name to see if anything popped up." The trial court found that there was no discovery violation.

On appeal, appellant argues that the State committed a willful and substantial discovery violation, and that the trial court's *Richardson* inquiry was inadequate.

---

[1] The transcript in the trial on Count III uses the term "Piggy," but it can be inferred that the references to "Piggy" were mistakes and that the lawyers and witnesses were really saying, "Biggy" or "Biggie."  In the trial on the first two counts, all of the references to appellant's alleged nickname were to the name "Biggy"—not "Piggy."  Further, appellant testified that "Piggy" [sic] was his "favorite rap artist."  Presumably, appellant was referring to the late rapper Biggie Smalls, otherwise known as the Notorious B.I.G.

Where a discovery violation is brought to the trial court's attention, the court must conduct an inquiry as to whether the violation: (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation. *Richardson v. State*, 246 So. 2d 771, 774-75 (Fla. 1971). Even a *possible* discovery violation triggers the requirement to conduct a *Richardson* hearing, as the inquiry is intended "to flesh out whether there has indeed been a discovery violation." *Landry v. State*, 931 So. 2d 1063, 1065 (Fla. 4th DCA 2006). A trial court's rulings regarding the three prongs of *Richardson* "are reviewed for an abuse of discretion, but this discretion can be exercised only following a proper inquiry." *Brown v. State*, 165 So. 3d 726, 729 (Fla. 4th DCA 2015).

If the trial court incorrectly concludes that there was no discovery violation and fails to address each of the three prongs of *Richardson*, the *Richardson* hearing is inadequate. *See Thomas v. State*, 63 So. 3d 55, 60 (Fla. 4th DCA 2011) (holding that *Richardson* inquiry was inadequate where the trial court did not determine whether the violation was willful or inadvertent, did not determine if the violation was trivial or substantial, and did not require the State to demonstrate the lack of procedural prejudice).

A trial court's failure to conduct a proper *Richardson* inquiry is not per se reversible error, but is subject to a harmless error analysis. *State v. Schopp*, 653 So. 2d 1016, 1021 (Fla. 1995). "A discovery violation is harmless only if an appellate court can determine, beyond a reasonable doubt, that the defense was not procedurally prejudiced." *Casica v. State*, 24 So. 3d 1236, 1240 (Fla. 4th DCA 2009). "[T]he defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred." *Schopp*, 653 So. 2d at 1020.

A court's analysis of procedural prejudice "considers how the defense might have responded had it known about the undisclosed piece of evidence and contemplates the possibility that the defense could have acted to counter the harmful effects of the discovery violation." *Scipio v. State*, 928 So. 2d 1138, 1149 (Fla. 2006). The burden is on the State to demonstrate the lack of procedural prejudice to the defense. *Brown*, 165 So. 3d at 729-30. "[W]here the State commits a discovery violation, the standard for deeming the violation harmless is extraordinarily high." *Cox v. State*, 819 So. 2d 705, 712 (Fla. 2002).

In this case, as the State commendably concedes in this appeal, the prosecutor committed a discovery violation by failing to disclose appellant's Facebook page to the defense promptly upon discovering it.

4

The State was required to disclose the Facebook page because it contained a written statement that was made by the defendant—or at least a written statement that a jury could reasonably conclude was made by the defendant. *See* Fla. R. Crim. P. 3.220(b)(1)(C) (2012) (the prosecutor shall disclose to the defendant "the following information and material within the state's possession or control," including "any written or recorded statements . . . made by the defendant").

Although the prosecutor advised that he did not learn about the page until a few minutes before appellant testified, the prosecutor was under a continuing duty to promptly disclose the information to the defense. *See* Fla. R. Crim. P. 3.220(j) (2012). The fact that a defendant's Facebook page may be publicly available does not excuse the prosecutor's duty to disclose to the defense any statements made by the defendant on Facebook where such material is within the State's possession or control. Thus, the prosecutor committed a discovery violation and the trial court erred in concluding otherwise.

Because the trial court incorrectly concluded that there was no discovery violation and failed to address the three prongs of *Richardson*, the trial court's *Richardson* inquiry was inadequate. Moreover, we cannot agree with the State that the error was harmless beyond a reasonable doubt. Regardless of whether the discovery violation was willful, the violation was not trivial. The reference to appellant's nickname on his Facebook page—which was not previously disclosed to the defense—served to damage appellant's credibility and to corroborate the male victim's statements on the 911 call.

We are compelled to reverse because the State has failed to show that the defense was not procedurally prejudiced by the prosecutor's surprise use of appellant's Facebook page to impeach his testimony that he did not go by the nickname "Biggy." Had the Facebook printout been timely disclosed to the defense before appellant took the stand, defense counsel could have discussed the issue with appellant before he testified. Thus, at a minimum, the prosecutor's discovery violation could have affected appellant's decision as to whether to testify. *See Portner v. State*, 802 So. 2d 442, 446 (Fla. 4th DCA 2001) ("There is no impeachment exception to the *Richardson* rule. . . . In most cases, the decision whether a defendant will testify is a strategic call which can materially alter the outcome of a case. *A defendant's ability to make an informed decision in this regard is certainly affected by the state's nondisclosure of impeachment material discoverable under the rules.*") (emphasis added).

Because we cannot say beyond a reasonable doubt that the defense was

not procedurally prejudiced by the State's discovery violation, we reverse appellant's conviction for possession of a firearm by a convicted felon and remand for a new trial on that charge only.[2]

### *Sentencing*

Finally, we reverse appellant's habitual felony offender sentences and remand for resentencing, as the State failed to enter into evidence proof that appellant had the qualifying prior convictions. Our reversal is without prejudice to the State attempting to prove on remand that appellant meets the requirements for sentencing as a habitual felony offender. *See State v. Collins*, 985 So. 2d 985, 994 (Fla. 2008) ("[W]e hold that when a habitual offender sentence is reversed because of insufficient evidence, on remand for resentencing the State may again attempt to prove that the defendant meets the criteria for such sentencing.").

*Affirmed in part, Reversed in part, and Remanded.*

CIKLIN, C.J., and LEVINE, J., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

---

[2] Because Counts I and II were tried separately from the firearm charge, this error does not affect appellant's convictions for robbery and assault that were obtained in the first trial. Nor would this error affect the violations of probation.