DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RUSSELL MOON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-3002

[May 12, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Mindy F. Solomon, Judge; L.T. Case No. 15-010797CF10A.

Richard L. Rosenbaum of Law Offices of Richard Rosenbaum, Fort Lauderdale, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals from his conviction of attempted second degree murder, as a lesser included offense of attempted first degree murder. The defendant raises four arguments, none of which merit reversal.

We write to address only the defendant's first argument, contending the trial court erred by failing to conduct a *Richardson* hearing when the state committed a discovery violation by announcing mid-trial that it was re-designating the defendant's wife from a Category "C" witness to a Category "A" witness. The state properly concedes it committed a discovery violation, and that the trial court erred by failing to conduct a *Richardson* hearing. However, the state argues its discovery violation and the trial court's error were harmless because the state ultimately decided not to call the defendant's wife to testify, thus causing no procedural prejudice to the defendant.

We agree with the state's harmless error argument. Therefore, we affirm the defendant's conviction.

We present this opinion in four parts:
1. The trial testimony;
2. The discovery violation;
3. The parties' arguments on appeal; and
4. Our review.

## 1. *The Trial Testimony*

The testimony of the victim, along with his wife and three neighbors who saw and/or heard the incident, was consistent. For brevity's sake, this opinion will present the victim's testimony, as well as limited testimony from the co-lead detective and a fourth neighbor who was the defendant's family friend. The defendant chose not to testify.

The victim testified the defendant lived down the street from him. One afternoon, the victim was in front of his home using a shovel to put leaves into a garbage container. He saw the defendant's car pull up on the wrong side of the street next to where he was working. The defendant rolled down the driver's side window and started making insulting comments about the victim's father-in-law, who had recently passed away. The victim became upset and told the defendant "let my [father-in-law] [rest] in peace. He pass[ed] away. He's done." The defendant then reached down to his seat and showed a gun to the victim. The victim told the defendant to "get the f*** [out of] my yard." The defendant began to drive away, and the victim returned to his yard work.

However, the defendant immediately stopped the car, exited the car, and walked towards the victim with the gun. The victim began walking backwards. When the defendant was ten feet away from the victim, the defendant fired the gun at the victim. After the defendant fired the first bullet, the victim held up his shovel near his head to defend himself. He did not threaten the defendant with the shovel at any point. The defendant fired again. The victim was shot. The victim dropped the shovel in his driveway and fled to the back of his garage where he collapsed. The defendant got back in his car and left.

The co-lead detective testified he retrieved the audiotape of the defendant's 911 call made immediately after the shooting. The state played the 911 call for the jury. When the 911 operator asked, "What is your emergency," the defendant responded, "I just shot somebody." The defendant said it had happened about two minutes before. The following discussion then occurred between the 911 operator and the defendant:

911 OPERATOR:  Was this an accident?

DEFENDANT:  This guy was intimidating me on the street and he had a shovel and he was calling to -- to tell me -- he says, "F*** you" and all this stuff and I had a gun on the seat and I started to drive off.  Look like he was going to hit  -- hit my car with his shovel and I turned around, jumped out --

911 OPERATOR:  Okay, sir. ...--

DEFENDANT:  -- and I lost my temper.

The defendant's family friend testified that a month or more before the incident, the defendant told her about a dispute he was having with other neighbors.  The defendant told her the other neighbors had been harassing him.  The defendant also said he would shoot the other neighbors.  The defendant's family friend told the defendant that he could not shoot anybody because "he would go to jail; it would cause a mess; he'll probably lose his house and everything.  And [then] he said that he would make it look like self-defense."

## 2. *The Discovery Violation*

Before trial, the state's discovery disclosure had designated the defendant's wife as a Category "C" witness.  *See* Fla. R. Crim. P. 3.220 (b)(1)(A)(iii) ("Category C.  All witnesses who performed only ministerial functions or whom the prosecutor does not intend to call at trial and whose involvement with and knowledge of the case is fully set out in a police report or other statement furnished to the defense[.]").

At the beginning of the trial, the trial court invoked the rule of sequestration as to all expected trial witnesses.  Because the defendant's wife was not expected to be a trial witness, she remained in the courtroom throughout jury selection, opening statements, and some state witnesses' testimony.  According to the defendant, his wife remained present to support him and to actively assist his counsel throughout trial.

In the middle of the state's case-in-chief, the state moved to redesignate the defendant's wife as a Category "A" witness.  *See* Fla. R. Crim. P. 3.220(b)(1)(A)(i) ("Category A.   These witnesses shall include ... (3) witnesses who were present when a[n] ... unrecorded statement was ... made by a defendant ....").  Defense counsel objected, noting the rule of sequestration had been invoked and the defendant's wife had been able to remain in the courtroom when the trial commenced.  The trial court

3

responded that the defendant's wife being called as a witness likely would benefit the defense, if it benefitted either side at all.

Defense counsel objected again, arguing that converting the defendant's wife into a trial witness at that point precluded the defense from deposing or investigating her. The trial court agreed with that point. The trial court stated it would require the defendant's wife to be made available to the defense for a deposition, and "[i]f at that point in time, there's an issue that we have to deal with, again, we're going to deal with it." The trial court discussed setting up the defendant's wife's deposition for that night, but defense counsel then said the defense did not need the court to do that, since it was "our client's wife" and the defense didn't need "access to her."

Defense counsel then argued that the state, before calling the defendant's wife, should have to "proffer something relevant that she's going to say that is in dispute in front of this jury." The trial court responded it would not tell the state how to try its case and that defense counsel could make any appropriate objections. The following discussion then occurred:

> TRIAL COURT [speaking to defense counsel]: ... I don't think for a moment you're thinking that anything is being done in bad faith. ...

> DEFENSE COUNSEL: I don't think so, either. ...

> ...

> TRIAL COURT [speaking to the state]: ... I'm assuming this is done in good faith and not for any means just to keep [the defendant's wife] out of the courtroom. Is that correct?

> STATE: That's correct, judge. ...

The trial court ruled that the defendant's wife needed to leave the courtroom, and it would "entertain any motion" the defense wanted it to hear before she would be permitted to take the stand. Defense counsel argued he would "rather have her stay in the courtroom."

The trial court reiterated that both sides could choose whom to call and how to try their case. Defense counsel responded the state's action "is a shock and a surprise to me because the case is four years old and she's, right now, in the middle of trial, being converted to a witness that they

[had] said [they] definit[ely] are not calling ….” Defense counsel suggested the state call the defendant's wife to testify "right now" so that she did not have to leave, because she wanted to "watch her husband's trial." The prosecutor said she wanted to call the defendant's wife later in the trial. Defense counsel replied, "[t]hat's okay," and the trial court directed the defendant's wife to leave the courtroom.

Later in the trial, the state proffered that if it called the defendant's wife to testify, it would ask her "whether or not she knew the defendant was having problems with the next-door neighbor[.]" The state argued her potential testimony went to "motive" and whether the shooting was a "premeditated intentional act." Defense counsel objected that the defendant's wife's proffered testimony would be barred by spousal privilege. The trial court, out of an abundance of caution, decided to limit the defendant's wife's potential testimony to "how long she has been married and where she lives."

Shortly thereafter, the state announced it would not call the defendant's wife in its case-in-chief, but may call her in its rebuttal case. Ultimately, neither the state nor the defendant called the defendant's wife to testify at trial.

After the jury found the defendant guilty of attempted second degree murder, as a lesser included offense of attempted first degree murder, this appeal followed.

### 3. *The Parties' Arguments on Appeal*

The defendant summarizes his argument regarding the discovery violation as follows:

> The trial court reversibly erred by failing to conduct a *Richardson* hearing following a State discovery violation. After the Rule of Sequestration had been invoked, in the midst of trial, the Prosecutors had the Defendant's Wife … served with a Subpoena for Trial and moved the Court to allow it to convert [the Defendant's Wife] from a Category "C" witness to a Category "A" witness. By doing so, a discovery violation was committed. Despite bringing the discovery violation to the Court's attention, the Judge refused to get involved, telling the parties to proceed with the case.
>
> Based upon the facts and circumstances surrounding this neighborhood incident, the Court failed to make any inquiry

5

into all of the surrounding circumstances, and harmless error cannot be found. Reversal and remand for a new trial is required.

The state summarizes its response as follows:

> The trial court's error in failing to hold a *Richardson* hearing before converting [the defendant's wife] from a Category C to Category A witness during trial was harmless beyond a reasonable doubt, because there was no procedural prejudice from the change. The category conversion did not materially hinder [the defendant's] trial preparation or necessitate a change in strategy since the State decided not to call [the defendant's wife] to testify. …

### 4. *Our Review*

"A trial court's failure to conduct a proper *Richardson* inquiry is not per se reversible error, but is subject to a harmless error analysis." *Goldsmith v. State*, 182 So. 3d 824, 828 (Fla. 4th DCA 2016) (citation omitted). "A discovery violation is harmless only if an appellate court can determine, beyond a reasonable doubt, that the defense was not procedurally prejudiced." *Id.* (citation and quotation marks omitted). "The defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred." *Id.* (citation and quotation marks omitted).

"An analysis of procedural prejudice considers how the defense might have responded had it known about the undisclosed piece of evidence and contemplates the possibility that the defense could have acted to counter the harmful effects of the discovery violation." *Ward v. State*, 165 So. 3d 789, 791 (Fla. 4th DCA 2015) (citation and quotation marks omitted). "The required focus is on how the defense might have responded and not on whether the undisclosed evidence affected the verdict." *Id.* (citation omitted).

The state properly concedes a discovery violation occurred when the state re-designated the defendant's wife from a Category "C" witness to a Category "A" witness in the middle of trial. *See* Fla. R. Crim. P. 3.220(j) ("**Continuing Duty to Disclose.** If, subsequent to compliance with the rules, a party discovers additional witnesses or material that the party would have been under a duty to disclose or produce at the time of the previous compliance, the party shall promptly disclose or produce … the

6

witnesses or material in the same manner as required under these rules for initial discovery. ...").

The trial court was made aware of the discovery violation, yet failed to conduct an adequate *Richardson* hearing. *See Ward*, 165 So. 3d at 791 ("[T]he trial court must inquire as to whether the violation (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation.") (citation and quotation marks omitted).

However, the discovery violation was harmless beyond a reasonable doubt. First, the defense waived any argument that the violation was willful. The trial court commented to defense counsel, "I don't think for a moment you're thinking that anything is being done in bad faith." Defense counsel responded, "I don't think so, either." In other words, defense counsel agreed that the state's conduct was not willful.

Second, the discovery violation was trivial. After the state proffered that the defendant's wife's potential testimony would show "motive" and whether the shooting was a "premeditated intentional act," defense counsel objected that the testimony would be barred by spousal privilege. The trial court, out of an abundance of caution, decided to limit the defendant's wife's potential testimony to "how long she has been married and where she lives." These facts were undisputed and would have borne no relevance to the jury. Thus, the violation became trivial.

Third, and most importantly, while the state's mid-trial announcement that it was re-designating the defendant's wife from a Category "C" witness to a Category "A" witness had the *potential* to prejudice the defendant's trial preparation, that prejudice never came to pass, because the state never called the defendant's wife to testify. *Cf. Durrance v. State*, 44 So. 3d 217, 221 (Fla. 4th DCA 2010) ("Moreover, even if the state committed a discovery violation by failing to produce the transcript prior to the start of trial, we would find the trial court's failure to conduct a complete *Richardson* hearing to be harmless beyond a reasonable doubt, because the state never used any of the prior trial testimony."). Nevertheless, we note that if the state ultimately had called the defendant's wife to rebut the defendant's claim that he "was having problems with the next-door neighbor," then we may have found that the defendant's trial preparation was prejudiced, because the defendant never may have made that claim knowing the state would call his wife to potentially rebut that claim.

### *Conclusion*

Based on the foregoing, we conclude the state's mid-trial discovery violation in re-designating the defendant's wife from a Category "C" witness to a Category "A" witness, and the trial court's error in failing to conduct a *Richardson* hearing, were harmless beyond a reasonable doubt. On that argument, and on the other three arguments which the defendant raised in this appeal, we affirm. However, we use this opinion to remind our trial judges, once again, that when a discovery violation is alleged, the proper practice is to conduct a clearly-announced, step-by-step *Richardson* hearing, analyzing whether a discovery violation occurred, and if so, "inquire as to whether the violation (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation." *Ward*, 165 So. 3d at 791 (emphasis added) (citation and quotation marks omitted).

*Affirmed.*

CIKLIN and FORST, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

8